TOWNSEND et al. *v.* NORTHWESTERN INSURANCE COMPANY.

The risk incident to the making of necessary repairs is assumed by insurers against fire, in the absence of any stipulation to the contrary in the contract.

This liability is not defeated by a condition in the policy rendering it void if the premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring. Making repairs is not a way of occupying.

A cotton factory was insured upon the representation that the works were in good condition, and that there was a forcing pump therein, designed expressly for protection against fire and at all times in condition for use, which was worked by the water wheel. The assured interrupted the supply of water for several days for the purpose of substituting a new stone bulk-head for a wooden one which was decayed and ruinous, but might have been temporarily repaired or replaced by another one of similar materials in much less time. *Held*, that the work being done without unreasonable delay, the consequent diversion of water and disabling of the pump did not avoid the policy.

APPEAL from the Supreme Court. Action upon a policy of insurance against fire on a cotton factory and its machinery. Upon the trial, before Mr. Justice BROWN and a jury, at the Orange Circuit, it appeared that the plaintiffs' application for insurance was accompanied by a survey, in the form of questions propounded by the defendant and answered by the plaintiffs; one of these was: "Is there a good forcing pump in the factory, designed expressly for protection against fires, and at all times in condition for

Townsend *v.* Northwestern Insurance Company.

use?" This was answered in the affirmative, and the pump was described as situated by the side of the water wheel and gearing directly into a segment of the latter. In answer to another interrogatory, the works were described as in good condition.

One of the conditions annexed, and referred to by the policy, provided that "if any person insuring any building or goods shall make any misrepresentation or concealment; or if after the expiration of a policy and before the renewal thereof the risk of the building shall be increased by any means whatsoever; or if after insurance effected, either by original policy or by renewal thereof, the risk shall be increased, by any means whatsoever within the control of the assured; or if such building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring or renewal, such insurance shall be void and of no effect."

There was a wooden bulk-head at the pond from which the water to drive the wheel and pump was supplied, which, being decayed and in a bad condition, was removed by the plaintiffs, and a new one, made of stone masonry and of a different size and form, was substituted in its place. While this work, which occupied several days, was in progress, the water was diverted from the factory, and before it was completed the fire and loss occurred. There was evidence tending to prove that the old bulk-head might have been repaired, or taken out and replaced by a new one, of similar materials, in a day, and that water sufficient to work the pump might have been supplied by other means, while the stone bulk-head was being constructed The defendant suggested two different methods in which this might have been effected, making each of them the basis of a distinct request to the judge to charge the jury that, if they should find that a supply of water to the factory might have thus been maintained, the condition of the old bulk-head and the making of the new one furnished no jus-

tification or excuse to the plaintiffs for diverting the water or continuing such diversion to the time of the fire. The judge declined so to charge and the defendant took an exception. The judge, however, did charge in terms, as requested by the defendant, that if the jury found "that the plaintiffs could in any way, at a moderate expense, have kept up a supply of water to the factory while the new bulk-head was being made, the condition of the old bulk-head and the making of the new one furnished no justification or excuse for diverting the water from the factory before the fire and continuing that diversion to and at the time of the fire." The evidence and course of the trial, in other respects, are sufficiently stated in the following opinions. The plaintiffs had a verdict and judgment, which, having been affirmed at general term in the second district, the defendant appealed to this court.

*Samuel Beardsley*, for the appellant.

*E. L. Fancher*, for the respondents.

HARRIS, J. The plaintiffs, in their application for insurance, represented their works to be in good condition and their machinery in good repair. Upon the trial, evidence was given tending to show, and perhaps showing, that this was a misrepresentation. Upon this ground the judge was asked to nonsuit the plaintiffs. This he declined to do; but he charged the jury that if, at the time the representations were made, the plaintiffs knew that the works were not in good condition, or if they made the representations in ignorance of the fact that the works were not in good condition, yet, if the representations were material to the risk, and were, in fact, untrue, the plaintiffs were not entitled to recover. The charge was not excepted to, and was, in fact, unexceptionable. The question whether the representations, in relation to the condition of the works, were untrue,

was a question of fact for the jury to decide; so, too, the question whether, if the representations were untrue, they were made with knowledge of the fact that they were untrue, or under the mistaken belief that they were true; and so, again, the question whether, if the representations were untrue, but innocently made, they related to matters material to the risk. All these were questions for the jury and were properly submitted to them.

It was made a condition in the contract of insurance that if after insurance effected the risk should be increased, by any means whatever within the control of the assured, it should render the insurance void. The plaintiffs had represented that there was a good forcing pump, designed expressly for protection against fires, and at all times in condition for use.

It appeared upon the trial that the bulk-head, at the pond which supplied the factory with water, which was of wood, being out of repair, was taken down, and a new bulk-head, constructed of stone masonry, was substituted in its place. While this was being done, the water was turned off and the pump rendered useless. It was insisted by the defendants' counsel that, by making this change, the plaintiffs had materially increased the risk, and thus rendered the insurance void. Upon this ground, also, the court was asked to nonsuit the plaintiffs. The nonsuit was refused, and, upon this point, the court charged the jury that the defendants had assumed the risk of making ordinary and necessary repairs; and if, in making such repairs, the supply of water had been necessarily interrupted, and there had been no unreasonable delay in making the repairs, the interruption would not avoid the policy; but if, on the other hand, the supply of water had been unnecessarily interrupted, and the risk thus increased, the plaintiffs could not recover. To this part of the charge, and to this only, the defendants excepted. It was said upon the argument, and perhaps with truth, that " the upshot of this charge was, that the plain-

tiffs had a right, if the old bulk-head was ruinous, to remove it and build a new one of stone, although the pump was thereby totally disabled and the risk of fire increased."

This doctrine I understand to have been distinctly asserted by this court in this very case, when before it upon a former occasion.

[The learned judge here quoted from the opinion then delivered by JOHNSON, (now) Ch. J., which is hereinafter given at large, and then continued:]

There can be no doubt, I think, that where there is no express provision in the contract involving a relinquishment of the right to perform the ordinary acts of ownership which are usually exercised by owners over their own property, or restricting the party insured as to what he may do upon his own property, he is authorized, without vacating his policy, to make any repairs which may be required to render the premises useful for the purposes to which they are devoted. It is not to be presumed, in the absence of any express agreement on the subject, that when he effects an insurance on his building the owner deprives himself of the right to use it in the common and ordinary mode, including the right to make all proper and reasonable repairs.

But it was insisted, on the trial, that the removal of the old bulk-head and the substitution of a stone structure in its place was an alteration and not a mere repair. The court was accordingly requested to charge the jury that, if an entirely new bulk-head was constructed in place of the old one torn down, of different materials and in different form, designed as an improvement upon the old one, then it was not a case of ordinary repairs. In the refusal so to charge there was no error. The substitution of a new bulk-head for one that had become useless by decay was certainly a repair, and not the less so because, in making the repair, the owner thought fit to make use of a more durable material than had at first been employed.

Townsend *v.* Northwestern Insurance Company.

All that the court refused to do was to charge, as matter of law, that the substitution of a new bulk-head for an old one was not a case of ordinary repair. At the most, it could only have been required to submit the question to the jury ; and this in fact was done, for, without deciding whether the new bulk-head was to be regarded as a repair or an alteration, the court instructed the jury that, if by any means whatsoever within the control of the assured, except in regard to reasonable and necessary repairs, any change had been made in the condition of the building or the machinery therein, or in the apparatus for the extinguishment of fires, whereby the risk had been increased, the insurance was void. This was certainly enough. The jury were left, without restriction, to inquire whether anything had been done, beyond the making of reasonable and necessary repairs, whereby the defendants' risk had been increased, with the instruction that, if the result of this inquiry should be in favor of the defendants, they were entitled to a verdict. This was all that the defendants had a right to claim. The judgment should be affirmed.

JOHNSON, Ch. J. The principal question in this cause arises upon the defendants' exception to the charge of the judge in respect to the right of the plaintiffs to repair the buildings insured. It was ruled, and the jury was instructed, that the plaintiffs had a right to make reasonable and necessary repairs, provided they made them within a reasonable time and in a reasonable manner; that if the making of these repairs necessarily interrupted the supply of water to the tank, and they made no unreasonable delay, then the policy was not thereby rendered void. This ruling was made irrespective of the question whether the interruption produced an increase of risk, and, of course, involves the position that such an increase of risk would not necessarily make void the policy.

The defence is placed upon the ground that such an increase of risk, occurring by means within the control of the assured, avoids the policy, notwithstanding its being necessarily occasioned in the process of repairing the building. The following clause, forming a part of what is contained in clause I, under the head of "Conditions of insurance," in the policy, is that on which the defendants rely as the basis of their defence: "If any person insuring any building or goods in this office shall make any misrepresentation or concealment; or if after the expiration of a policy of insurance and before the renewal thereof the risk of the building shall be increased by any means whatsoever; or if after insurance effected, either by original policy or by the renewal thereof, the risk shall be increased by any means whatever within the control of the assured; or if such buildings or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring or renewal, such insurance shall be void and of no effect."

In order to say whether the risk has been increased, it is necessary to inquire, in the first place, what risk was originally assumed. In other words, upon the insurance of a building, is not the risk incident to the process of necessary repairs a part of the general risk assumed by the insurers, in the absence, of course, of any stipulation in the contract importing the contrary?

When a building is insured, it is, of course, understood that it is to be used in the ordinary way of using similar buildings, and no one expects that it is to be set apart and wholly devoted to being kept safely. One of the ordinary incidents to this usual occupation is that of making repairs. The general right to make these has never been doubted, when the policy contained no special provision upon the subject. It has never been supposed that, to a claim for a loss happening in the course of or by means of necessary repairs, the insurer could say, the risk by which that loss

was occasioned was not within the terms of my contract. In all the cases I have met with, where the subject is spoken of, the right to make such repairs is assumed to be clear, and nowhere is it denied, unless upon the ground of some special stipulation to the contrary. *Stetson* v. *Massachusetts Mutual Fire Insurance Company* (4 *Mass.*, 330), *Jolly* v. *Baltimore Equitable Insurance Company* (1 *Harr. & Gill.*, 295), *Dobson* v. *Sotheby* (1 *Mood. & Malk.*, 90), *Grant* v. *Howard Insurance Company* (5 *Hill*, 10), *Jennings* v. *Chenango Mutual Insurance Company* (2 *Denio*, 75), *O'Neil* v. *Buffalo Fire Insurance Company* (3 *Comst.*, 122), all illustrate this position. It is quite true that while such repairs are being made there may be a greater exposure to loss by fire, as may be also the case when fires are required in the winter for the comfort of the occupants. Such exposure, however, is part of the proper risk insured against. It is a hazard which the subject insured undergoes in the course of ordinary occupation, and which, therefore, cannot be deemed an increase of risk, within the condition set up by the defendants as avoiding their contract.

In my own opinion, the language of the condition is not such as to permit its application to the hazard occasioned by making ordinary repairs. The first clause of the condition is, "after the expiration and before the renewal of a policy, if the risk of the building be increased by any means whatsoever." The second clause relates to an increase of risk, by any means whatever within the control of the assured, while the policy is in force. The first clause, applying to that period when the contract is in not force, and yet is capable of being renewed, declares that it shall be inoperative if the risk of the building shall be increased by any means whatever. In that state of facts, whether the increase of risk was within the control of the assured or not was immaterial. This latter element becomes important in the case provided for in the second clause, where the policy is sup-

posed to be in force at the time of the increase of the risk These two clauses provide for the risk of the building in all the contingencies for which provision was thought proper, leaving the subject of the occupation of the building or premises to be treated of in the third clause. It is true that, in the second clause, the words "of the building" are not repeated after the word "risk;" but this was not neces-sary to convey and limit the sense. The sentence consists of three branches, of which the last treats of the occupation of the premises, and exhausts that branch of the subject; and the two first treat of the state of the building distinct from its occupation, and furnish the rules which must govern under the several sets of circumstances which the parties have specified. Whatever "risk of the building" means, it will be seen that under the first clause an increase of it renders the policy incapable of renewal. Now, if after the policy had expired, and before the time for its renewal was elapsed, some ordinary repairs had been effected upon the building, leaving it in the substantial state from which it had deteriorated, there would seem to be no good reason why a renewal should not be possible; and it would not be pretended that the words in question were intended in that clause to cover such a case. They are, I think, restricted to the state or condition of the building either as to changes in its own structure increasing the risk, or changes in the buildings or erections in its neighborhood, or in the mode of occupying them. If this is their meaning in the first clause, the same meaning must be given to the expression in the second clause, if the observations I have before made are correct. The third clause is, "if such buildings or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring or renewal, then the insurance shall be void." Making necesary repairs about a building cannot be regarded as a way of occupying it. The phrase has a sense of continu-

ousness, like the word ·"keeping," in *Dobson* v. *Sotheby*, above cited, and in *Hynds* v. *Schenectady Insurance Company* (1 *Kern.*, 554), which is essential to its meaning.

SELDEN, J., expressed no opinion; all the other judges concurring.

Judgment affirm. d.

END OF CASES DECIDED IN THE SEPTEMBER TERM.

SMITH.—VOL. IV.      17