## JAMES McEVOY, JR., *vs.* THE SECURITY FIRE INSURANCE COMPANY OF BALTIMORE CITY ET AL.

*Fire Insurance—Fire Caused by Earthquake—Damage by Fire After Damage by Earthquake.*

When the language of a policy of insurance is not entirely clear, and a doubt exists as to the nature or extent of a clause limiting the liability of the insurance company, that construction should be adopted which is most favorable to the insured, since the policy was prepared by the insurance company and it was bound to make its meaning clear.

A policy of insurance against all direct loss or damage by fire provided that the insurer should not be liable for loss caused directly or indirectly by invasion, riot, etc., or by neglect of the insured to use all reasonable means to save the property at or after the fire, "or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind or from any cause, or the bursting of a boiler, or earthquake, or hurricane, or lightning; but liability for direct damage by lightning may be assumed by specific agreement hereon." Property insured under this policy was destroyed by a fire originating on the premises and caused by the earthquake in San Francisco in 1906, and other insured property by fire so caused which originated on premises not covered by the policy.

*Held,* that the bracketed clause both grammatically and logic-
ally embraces ·each of the destructive forces thereafter men-
tioned; *i. e.,* explosion, earthquake, hurricane, lightning, and
means that the insurer is not liable for direct loss caused by
these forces, but is liable for an indirect loss caused by fire
which ensues from them or any one of them.

*Held,* further, that the insurance company is liable for damage
from fire caused by an earthquake which fire originated on
the property of the party insured, and also when the fire so
caused by the earthquake spread from its point of origin un-
til it reached and destroyed property of the insured.

*Decided March 24th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-
LER, J.)

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and
HENRY, JJ.

*Joseph C. France* and *Charles A. Marshall,* for the appel-
lants.

*Charles Morris Howard* and *John Philip Hill,* for certain
appellees.

Briefs were filed for certain appellees by *Gans & Haman,*
*Geo. Stewart Brown, Ralph Robinson, C. Howard Millikin,*
*Hill & Ross, Hinkley & Morris* and *F. V. Rhodes.*

PEARCE, J., delivered the opinion of the Court.

The Security Fire Insurance Company of Baltimore City
became insolvent in consequence of the conflagration in San
Francisco which accompanied or followed the earthquake in
that city on April 18th, 1906, and its affairs are now in course
of liquidation in the Circuit Court of Baltimore City. In
an auditor's account, filed June 15th, 1908, certain dividends

are allowed to a number of San Francisco policy holders upon their claims filed in the case, and to these allowances, the appellants, being stockholders and creditors of the insurance company, have excepted on the ground that the fire was caused by the earthquake, and that the insurance company is not liable under the terms of the policies.

The exceptants, proceeding under sec. 196 of Art. 16, have raised certain questions of law for the opinion of the Court, which the Court directed to be heard as a preliminary matter upon the allegations of the application and the exhibits accompanying it.   These exhibits are two forms of policies referred to in the application, and certain sections of the Civil Code of California, but it is not necessary that these should be set out, nor that the allegations of the application should be noticed specially.   The policies upon which the claims are made insure the holders "against all direct loss or damage by fire, except as hereinafter provided," and they were made and accepted subject to the stipulations and conditions printed on the back of said policies.   These stipulations and conditions are as follows:

"This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, labor strike, civil war, or commotion, or military or usurped power, or by order of any civil authority, to prevent the spread of fire, whether such order be legal or not, nor in consequence of any neglect of, or deviation from, police or municipal laws, rules or ordinances where such exist; or by theft at or after a fire; or by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring premises, or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind or from any cause, or the bursting of a boiler, or earthquake, or hurricane, or lightning; but liability for direct damage by lightning may be assumed by specific agreement hereon."

It is upon the construction of these stipulations that the liability of the insurance company depends.

The questions ordered by the Court to be heard are as follows:

A. Under the statement of facts alleged in said application, is the Security Fire Insurance Company of Baltimore City liable for loss or damage to the property of the claimants therein mentioned, caused by earthquake or by dynamite prior to its burning?

B. Is the Security Fire Insurance of Balitmore City liable for loss or damage to the property of said claimants from fire caused by an earthquake, which fire originated in the property or buildings containing the property of these claimants?

C. Is the Security Fire Insurance Company of Baltimore City liable for loss or damage to the property of said claimants from fire caused by an earthquake, which fire spread from its point or points of origin until it reached and destroyed or damaged the property of said claimants?

D. Is the Security Fire Insurance Company of Baltimore City liable for loss or damage to the property of said claimants from fire, when, by reason of the occurrence of the earthquake, the water supply of the City of San Francisco had been destroyed, the water mains and pipes burst or disconnected, and said water supply rendered useless as a protection against fire or as a means of control or extinguishment thereof?

Upon argument heard the Court decreed that the insurance company was not liable for the loss caused as stated in question A, but decreed that it was liable for the loss caused as stated in questions B, C, and D, and from that decree the exceptants have appealed. Question A, being decided in favor of the appellants, need not be considered, there being no cross-appeal, and in their brief the appellants say they do not urge the point involved in question D, as an independent ground of exemption from liability and refer to it only for the purpose of showing, as they contend, the strength and reasonableness of their argument upon questions B and C.

We are required, therefore, to determine only the correctness of the Court's ruling upon questions B and C.

Counsel on both sides were agreed that, so far as could be ascertained, there is only one case ever decided upon the precise language of the policy now before us, and that is *Borgfeldt* v. *North German Fire Insurance Company,* decided by the General Court of Hamburg in a case growing out of this San Francisco conflagration, and a copy of the opinion in that case has been filed with the brief of one of the appellees.

The fires which followed this earthquake were most disastrous, both to insurers and insured, making this case one of much importance, and we have given to it the careful reflection and examination which its own importance and the elaborate and able arguments of counsel demand.

Stated in concrete form, without present regard to the exact phraseology of the clause of the policy in controversy, the appellants contend that the company is not liable for any *earthquake-started* fire, while the appellees contend that if fire *ensues from an earthquake,* the company is liable for the *loss by fire,* though not liable for any *precedent loss caused by earthquake.* In the absence of any express or closely analogous, authoritative decision, we must resort to the general rules for the construction of contracts of this character, and to such intrinsic evidence of intention as may be afforded by the language of the policy and its collocation. It must be admitted that in Maryland the rigor of the prevailing rule to construe all insurance policies strictly against the company, has been relaxed to this extent—that they are not *specially* subjected to such rigid construction, but are to be construed as other contracts. *Weaver's Case,* 70 Md. 536; *Hamilton's Case,* 82 Md. 91. But these cases do not conflict with the general rule as to all contracts, which *Mr. Brantly,* on pages 183 and 184 of his work on *Contracts,* states thus: "Where doubt exists as to the construction of an instrument prepared by one party upon the faith of which the other has incurred obligation, that construction should be adopted which will be favorable to the latter party." In *Wallace* v. *German-American Ins. Co.,* 41 Fed. Rep. 744, JUDGE McCRARY said: "If the words employed, of themselves, or in connection with

other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the assured. As the insurance company prepares the contract and embodies in it such conditions as it deems proper, it is in duty bound to use language so plain and clear that the insured cannot mistake or be misled as to the duties and burdens thereby imposed upon him." In the *Indemnity Co.* v. *Dorgan,* 7 C. C. A. 592, JUDGE TAFT said: "Policies are drawn by the legal advisers of the company, who study with care the decisions of the Courts, and with these in mind attempt to limit as nearly as possible the scope of the insurance. It is only a fair rule, therefore, which Courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer." In *Berliner* v. *Travelers' Insurance Co.,* 121 Cal. 460, the Court said: "Where the terms of a policy permit of more than one construction that will be adopted which supports its validity." We can discover no conflict between these cases, and the views of our predecessors upon this subject, as stated by JUDGE ALVEY in *Transatlantic Fire Ins. Co.* v. *Dorsey,* 56 Md. 79, where it was said: "It is certainly true as a rule of construction that where an insurance company attempts to limit or restrict the general operation of its contract of insurance, by special exceptions or exemptions, it is bound to do so by clear and explicit terms; and if it fail in this, it cannot complain that the party insured is given the benefit of any doubt that may be reasonably raised as to the nature or extent of the exception from the general risk assumed. Where, however, the terms of the contract are clear and explicit, they must be allowed their full force and effect; there being no distinction in this respect between the contract of insurance and any other contract." This last clause is just what was said in *Kelly's Case,* 32 Md. 435, and there is no conflict between these cases. JUDGES ALVEY and MILLER sat in both cases, two of the most eminent judges who ever sat in this Court, and it cannot be said that they repudi-

.ated in the latter anything that was said in the former. It is the understanding and intention of the *parties*—that is, their *mutual* intention—which is to govern the contract, if it can be reasonably deduced from the contract itself; but if the contract is so expressed as to be susceptible of one interpretation asserted by one party as his understanding, and of another interpretation asserted by the adverse party as his understanding, then there is no mutual intention of the parties, and that interpretation will be adopted which will uphold rather than defeat the validity of the instrument. These are not special rules for the construction of insurance contracts. They are but the application to these contracts of the general rule of construction to all contracts, *"ut res magis valeat quam pereat,"* the propriety and necessity of which is especially apparent where the insurer alone prepares the contract and embodies in it what he deems proper.

With these principles in mind, we will now examine the clause we have transcribed and upon the construction of which the decision must depend. An analysis of that clause will in our opinion show that the company has plainly exempted itself absolutely from loss caused by or in consequence of certain conditions or circumstances, and that it has conditionally and partially exempted itself from loss resulting from certain other causes, conditions or circumstances—(1) It has absolutely exempted itself from "loss caused directly or indirectly by invasion, insurrection, riot, labor strike, civil war, commotion, miltiary or usurped power," all these being various manifestations of *vis major*. (2) It has absolutely exempted itself from loss caused by the exercise of any paramount civil authority exerted to prevent the spread of fire. (3) It has absolutely exempted itself from loss in consequence of any neglect of or deviation from police or municipal regulations by the insured, or from loss by the neglect of the insured to use all reasonable means to save and preserve property at and after a fire, or when property is endangered by fire in neighboring premises. (4) It has absolutely exempted itself from loss by theft at or after

a fire.    (5) It has (*conditionally* and partially) exempted it-self from loss resulting from explosion of any kind or cause, or the bursting of a boiler, or an earthquake, or hurricane or lightning, unless in any of these cases fire ensues, and in that event it is liable for the damage by fire only.    This being a fire policy there is an adequate reason for each of these provi-sions, which abundantly justifies the construction we have in-dicated.    When social disorder and violence reign, it has been found by experience to be necessary to contract against their effect upon certain classes of obligations such as those under consideration, and where the State or a municipality inter-venes and destroys the property of an individual for the com-mon good, an insurer ought in justice to be released from the obligation of indemnity against which he could never safely contract.    So when the insured by his own neglect causes or directly contributes to the loss insured against, it is fit that he should bear the loss himself; and if property endangered but not destroyed by fire is stolen at or after the fire it does not come within the true intent and meaning of a contract of indemnity against fire.    But explosions of any kind, the burst-ing of a boiler, an earthquake, a hurricane, or even lightning, may destroy property, without fire ensuing, and then such loss does not naturally come within the scope of a fire policy. But an explosion or the bursting of a boiler may, and often does, result in fire either instantaneous or latent.    An earth-quake or a hurricane may level a building and scatter fire burning within, thus causing the complete destruction of the material.    Lightning very generally results in instantaneous fire, and is therefore made in this, as in most fire policies, an exception to its associated risks, and direct loss therefrom may be assumed by specific agreement noted on the policy. The construction of this policy which we have thus indicated as correct in view of the reasons above stated leading to it, is also sustained by the structure of the clause in controversy which we have pointed out, and by the grammatical rules ap-plicable to determine its meaning.

The bracketed clause "(unless fire ensues, and, in that event, for the damage by fire only)" both grammatically and logically embraces each of the destructive forces of nature (not necessarily, but sometimes resulting in fire) which follow and are all alike bound up with that bracketed clause. For direct loss caused by these independent destructive forces, the company refuses to be bound, but contracts to make good the loss caused by fire ensuing from them.

If anything is needed to place the correctness of this interpretation of the policy beyond doubt, it will be found in the closing paragraph of the clause in question, viz, "but liability for *direct* damage by lightning may be assumed by specific agreement hereon." It is clear beyond question from this language that *indirect* loss from lightning is embraced in the risk assumed. If this were not so, then to give any meaning to that paragraph, it would have to read "but liability for all or any damage by lightning may be assumed by specific agreement hereon." We have already shown that the words *explosion of any kind, bursting of a boiler, earthquake, hurricane and lightning* are subject to the same precise qualifications and limitations, and if the policy covers indirect loss by lightning there is no escape from the conclusion that it also covers indirect loss from earthquake.

The construction we have given to this policy is the same given in the *Borgfeldt Case, supra,* by the General Court of Hamburg, to a policy containing the identical language now under consideration. That Court appears to be constituted of one law judge and two lay, or business, judges, and we are not to be understood to refer to that case as in any sense authoritative, but they seem to have brought to their consideration of that case excellent common sense, which, after all is said, seems to be the best solvent of the meaning of ordinary language, unless the instrument is clearly within the scope of some technical and imperative rule of law which is made conclusive. In the course of that opinion, the Court said: "The intention of the defendant (alone) is of less importance than the question of how this intention was expressed, and how,

from an unprejudiced point of view, this provision is to be construed in reference to the remaining provisions." This was said in reference to the defendant's contention that *its intention* was that the exception as to ensuing fire was to relate only to explosion, and after the same course of reasoning which we have adopted in this case, the Court adds: "The defendant has, without perhaps sufficiently considering the consequences, introduced into the clause taken from the standard policy the words *'bursting of a boiler, earthquake, hurricane.'* By so doing it has effected the result that the contents of the parenthesis apply also to these causes." We think this is sound and persuasive reasoning, directly supporting what we have said herein as to the necessity of mutuality of intention of the parties as to the construction of the contract, when there are two possible constructions, one of which would uphold and the other would defeat the validity of the instrument.

While the precise point in this case was not presented in *Dorsey's Case, supra,* where *explosions only* were connected with the parenthetical clause as to loss by *ensuing fire,* the language of JUDGE ALVEY on page 79 in discussing that clause is strongly suggestive of the views we have expressed here. We have been referred in the briefs to four reported cases arising out of the San Francisco fire, all of which we have examined, but as it was admitted at the argument that in all these cases the language of the policies was different from that at bar, and as we do not find any of these cases controlling in this case, it is not necessary to prolong this opinion by any special reference to them, and we cite them here only as in a general way bearing upon the question before us.

These cases are *Baker and Hamilton* v. *Williamsburg City Fire Ins. Co.,* 157 Fed. Rep. 280; *Henry Hilp Tailoring Co.* v. *Williamsburg City Fire Ins. Co.,* 157 Fed. Rep. 285; *Richmond Coal Co.* v. *Commercial Union Co.,* 159 Fed. Rep. 985; *Board of Education* v. *Alliance Ins. Co.,* 159 Fed. Rep. 994. We were also referred to *Willimsburg City Fire Ins. Co.* v. *Willard,* 164 Fed. Rep. 404, which also grew out of the San Francisco Fire. There also the language of the policy

is different from that at bar, but the general reasoning of
that decision is in accord with the views we have here ex-
pressed.

We have read and considered carefully the elaborate brief
and very able argument of the distinguished counsel for the
appellant, but we are not able to adopt their views. Their
construction requires us to read into this clause (upon the
theory that this is exclusively a fire policy) the words, "by
fire" wherever the word "loss" occurs. There are two in-
superable objections to this course. First that words can only
be imported into a written instrument when it is impossible
otherwise to reconcile the particular clause with other parts
of the instrument. Two illustrations will suffice to show that
this objection applies to the present case.

In *Commercial Insurance Co.* v. *Robinson,* 64 Ill. 265, the
policy provided that the company should not be liable "for
any loss or damage by fire caused by means of invasion, etc.,
*   *   *   nor for any loss caused by the explosion of gun-
powder, etc.*"* The company contended that the words *by
fire* should be read into the latter paragraph, after the word
*loss,* but the Court would not allow it, saying the difference
in phraseology between the two clauses is so marked, that
when we consider their connection with each other, we can-
not resist the conclusion that the difference was intended."

In *Berliner* v. *Travellers Ins. Co.,* 121 Cal. 451, the policy
provided for double damages for injuries sustained "while
riding as a passenger in any passenger conveyance, using
steam, etc." The insured was killed in a railway accident
while riding on the engine drawing a passenger train, and
the company contended "that the contract itself did not pro-
vide for death by an accident while riding upon a locomotive,
but only in a conveyance intended for passengers." The
Court held, however, that the locomotive was a part of the
*conveyance* provided for the transportation of passengers, and
that the company "could not import into that clause of the
policy, conditions as to the part of the conveyance in which

the insured must·be, and thus by construction work a forfeiture."

For all the reasons we have stated we are of opinion that the ruling of the learned judge below upon questions B & C were correct.

In reference to question D, the appellants very properly declined to press it, as the authorities appear to be quite uniform that where insurance companies expect to rely upon a constant and ever ready water supply for the extinguishment of fires they must clearly provide for it in their policies. *Townsend* v. *Northwestern Ins. Co.,* 18 N. Y. 168; *LeRoy* v. *Park Fire Ins. Co.,* 39 N. Y. 56; *Houghton* v. *Manufacturers Fire Ins. Co.,* 8 Metc. 114; *Milling Co.* v. *Fire Ins. Co.,* 76 Cal. 239; *Baker & Hamilton* v. *Williamsburg City Ins. Co.,* 157 Fed. Rep. 283.

> *Rulings and order affirmed. Costs to be paid out of the funds in the hands of the Receiver.*