PATTERSON *v.* MILLER.

1. MORTGAGES—PRIORITY OF MORTGAGES.
    Where purchase-money mortgage on city lots provided that it should be subsequent to mortgage or mortgages thereafter placed on premises not exceeding 50 per cent. of total cost of lot and buildings, mortgage obtained by purchaser is prior lien, although recorded subsequently to purchase-money mortgage.

2. CONTRACTS—CONSTRUCTION—AMBIGUITY.
    Where there is ambiguity in an instrument, it is most rigidly construed against the person who drafted it.

3. Mortgages—Implied Covenants Not Permissible Under Statute.

Where purchase-money mortgage on city lots provided that it should be subsequent to mortgage or mortgages thereafter placed on premises not exceeding 50 per cent. of total cost of lot and buildings, no covenant could be implied postponing effect of such clause until buildings should be erected thereon (3 Comp. Laws 1915, §§ 11691, 11726), notwithstanding claim that its sole purpose was to enable purchaser to obtain mortgages on lots on which buildings should be erected.

4. Same—Construction of Mortgage.

Provision in purchase-money mortgage on lots that it should be subsequent to mortgage thereafter placed on premises "not to exceed in amount 50 per cent. of the total cost price of the lot or lots therein conveyed and of the building or buildings thereon situated" means 50 per cent. of the cost of the lots, and, if buildings are erected on said lots, then an additional amount to the extent of 50 per cent. of the amount of the building or buildings.

5. Same—Jurisdiction—Priority of .Mortgage.

In suit by mortgagee to establish priority of his mortgage and to restrain foreclosure of claimed junior mortgage, court has jurisdiction to pass on priority of mortgages.

6. Same—Moot Question—Appeal and Error—Injunction.

Right of court to grant senior mortgagee injunction restraining foreclosure of junior mortgage became moot where defendants, on appeal, waived objection, and injunction has been dissolved.

7. Same—Equity—Jurisdiction.

Equity, having taken jurisdiction of suit to determine priority of mortgages, has jurisdiction of entire controversy, and should determine amount due on prior mortgage.

8. Same—Amount Due—Remanding Case.

Decree affirming decree of court below determining priority of mortgage covering city lots is without prejudice to right of junior mortgagee to have exact amount due under senior mortgage determined, and case is remanded to court below for further action in accordance therewith.

Appeal from Wayne; Webster (Arthur), J. Submitted October 10, 1929. (Docket No. 51, Calendar No. 34,275.) Decided .December 4, 1929.

Bill by Peter Patterson against Peter A. Miller and others to determine priority of mortgages, enjoin foreclosure, and for other relief. From a decree for plaintiff, defendants appeal. Affirmed and remanded.

*Lloyd L. Axford, William E. Tarsney,* and *Arthur Axford,* for plaintiff.

*C. W. Videan,* for defendants.

BUTZEL, J. Defendant Miller sold defendant Martin 40 unimproved lots in the city of Detroit, Michigan, for the sum of $60,000, and received upon delivery of the deed $9,000 in cash and a purchase-money mortgage for $51,000. Nothing was said in the deed to the effect that it was given subject to a purchase-money mortgage. Martin, before closing with Miller, had taken the abstracts showing title in his grantor to the office of the Investment Mortgage Company, Inc., of which plaintiff Patterson is secretary and treasurer, and with whom he had negotiated a loan of $20,000 to be secured by six mortgages on the various lots, no lots being included in more than one mortgage. Upon receiving Martin's deed and the execution of the mortgages, which ran to Patterson as mortgagee, the loan was made by Patterson. He recorded the deed and the mortgages at the same time. He did not examine the records in the register of deeds' office to ascertain whether there had been any change in the title after the time to which the abstracts had been certified. Had he done so, he would have discovered that the deed and the mortgages he received from Martin were recorded just 20 minutes after the time Miller had recorded his purchase-money mortgage for $51,000 on the same property. Miller knew nothing whatsoever about the

Patterson mortgage, and Patterson was likewise in complete ignorance of the Miller mortgage. They both acted fully within their rights, in the best of faith, and in total ignorance of the fact that Martin had mortgaged the same property twice.

Martin in his testimony claims that it was under-- stood by Miller that he had a right to give a mortgage which would be prior to the Miller mortgage in order to enable him to raise money to build on the lots and thus improve the entire subdivision. He did build on some of the lots, which were released from the mortgages, and thus materially reduced the amount that was owing both on the Miller and Patterson mortgages. It is obvious that Miller would not have been willing to consent to Martin's raising the sum of $20,000 on property for which a deed had been given upon payment of only $9,000, and for which there was still $51,000 due. We are satisfied that Miller's good faith should not be impugned, and that he was an innocent party in the transaction.

The Miller mortgage, having been the first to be given and recorded, would be entitled to priority unless a clause in said mortgage would give the Patterson mortgage a prior lien on the property. Miller subsequently assigned his mortgage to defendant McAlpine, who in turn assigned it to defendants Niles and Peters. Miller was the loaning agent for Niles and Peters. Miller at a much later time took deeds to some of the lots on which houses had been built and which had been released from both mortgages, but this need not enter into the questions of the case.

Both Patterson and Miller remained ignorant of the existence of the other's mortgage until approximately a year had elapsed, when Patterson found out about the Miller mortgage. Subsequently,

Miller's assignees, defendants Niles and Peters, began foreclosure proceedings by advertisement. Thereupon Patterson brought this suit to restrain the foreclosure of the Miller mortgage. As plaintiff he claims that two of the mortgages he received, which were partly unpaid, one for $6,500 covering 13 lots and one for $3,500 covering 7 lots, had priority over the Miller mortgage because the Miller mortgage contained the following secondary or junior provision:

"It is further mutually understood and agreed that this mortgage is and shall be subsequent, secondary and junior to any mortgage or mortgages hereafter placed upon said premises, provided, however, that such mortgage or mortgages shall be only such as may be approved by and executed to any person, banking corporation, insurance company or trust company of the city of Detroit, such mortgage or mortgages not to exceed in amount 50 per cent. of the total cost price of the lot or lots therein conveyed and of the building or buildings thereon situated, provided further that not more than one such prior mortgage shall be executed on any of the lots described in this indenture."

Plaintiff in his bill of complaint sought a decree establishing the priority of his mortgages over the Miller mortgages. He further prayed for an injunction to restrain the foreclosure sale so that purchasers at such foreclosure sale might not be misled into believing that they were receiving a good title to the property, when, as a matter of fact, they were only receiving a deed subject to the Patterson mortgage. Plaintiff further asked that the amount due on the Miller mortgage be reduced to the extent of the value of the equities in certain lots and the houses erected thereon, which had been deeded to

Miller for the benefit of defendants Niles and Peters. These improved lots had been released from the Patterson and Miller mortgages after buildings had been erected and new mortgages placed on said lots.

The lower court held that plaintiff had constructive notice of the Miller mortgage, with the above quoted secondary or junior clause in it. It, however, further held:

"Defendant Miller contends that a proper reading of this clause requires that Martin, the title-holder, before making the mortgage, must have a building or buildings on each of the lots mortgaged. This may have been the thought in the mind of Mr. Miller when he consented to this clause in his mortgage, but the language, to my mind, is not susceptible of such a meaning. If this were true, then Martin, who was a builder, would not be able to make a construction loan. He would have to, in each instance, have a building or buildings on the lot, the mortgage not to exceed 50 per cent. of the cost of the lot and buildings. This, to my mind, is a forced construction placed upon this clause, and the intention anybody would gather from a reading of the clause would be that the first mortgage must not be in excess of 50 per cent. either of the cost of the lot, or if a building stood on the lot then of the lot and building combined."

The lower court decreed that the Patterson mortgage was prior to the Miller mortgage, and thereupon dissolved the injunction, so that Niles and Peters might proceed to foreclose the Miller mortgage and sell the property subject to the Patterson mortgage. The lower court arrived at the correct conclusion. It is claimed on behalf of defendants that, since the mortgagor is supposed to use his own words and terms in drawing the instrument, in case of ambiguity the instrument will be construed most

strongly against the mortgagor, in favor of the mortgagee. *Stuart* v. *Worden,* 42 Mich. 154; *Jerome* v. *Hopkins,* 2 Mich. 96. However, in neither of these cases does it affirmatively appear that the mortgagee and not the mortgagor drafted the instrument. The Miller mortgage was drafted by Miller's attorney in his own office, and the general rule of law is that, where there is ambiguity in an instrument, it is most rigidly construed against the person who drafted it. *Moore* v. *Young,* 162 Mich. 237; *Heethuis* v. *Kerr,* 194 Mich. 689; *Greenough* v. *Willcox,* 238 Mich. 52; *Ardis* v. *Railway Co.,* 200 Mich. 400; *Hanley* v. *Porter,* 238 Mich. 617. The application of this rule as to mortgages is set forth in the case of *Owens* v. *Graetzel,* 146 Md. 361, 370 (126 Atl. 224, 39 A. L. R. 943), where the court stated as follows:

"The appellee having it entirely in his control and power and having drawn the mortgage, if it was the real understanding and intention of the parties that interest should be paid in advance, it should have been so expressed in the mortgage in language unambiguous and unmistakable. In Broom's Legal Maxims, the author, in discussing the maxim *verba chartarum fortius accipiuntur contra proferentem* states: 'The rule of law, moreover, that a man's own acts shall be taken most strongly against himself, not only obtains in grants, but extends, in principle, to all other engagements and undertakings.' In Brantly on Contracts (2d Ed.), p. 289, this author states: 'Where doubt exists as to the construction of a contract as a whole, or uncertainty as to its meaning, the words are to be taken most strongly against the party employing them.' In 6 R. C. L. p. 854, it is stated: 'A written contract should, in case of doubt, be interpreted against the party who has drawn the contract. Sometimes the rule is stated to be that where doubt exists as to the construction of an instrument prepared by one party thereto, upon

the faith of which the other has incurred an obligation, that construction will be adopted which will be favorable to the latter.' And this principle has been adopted and applied by this court in the case of *McEvoy* v. *Security Fire Ins. Co.,* 110 Md. 275 (73 Atl. 157, 22 L. R. A. [N. S.] 964, 132 Am. St. Rep. 428). As stated in 13 C. J. p. 545: 'Where a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions, and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage.'"

Defendants Niles and Peters claim that the junior or secondary clause was placed in the Miller mortgage only for the purpose of enabling defendant Martin to obtain mortgages on any of the lots upon which a building or buildings should be erected. They claim this clause did not give Martin the right to mortgage the lots unless such building or buildings had been erected thereon. They claim that upon a building being erected on a lot and an additional mortgage being secured for that purpose, the equity over and above such subsequent mortgage would become so great that the Miller mortgage could safely descend from a first to a second mortgage and still be ample security for the amount still due. In order to support such a construction of the secondary or junior clause in the Miller mortgage, it would become necessary to imply a covenant in said mortgage to the effect that said clause shall only become effective as to any lot or lots when buildings have been erected thereon.

However, in the case at issue, the statutory provision in regard to instruments is conclusive. Under 3 Comp. Laws 1915, § 11691, no covenant shall be implied in any conveyance of real estate, whether such conveyance contains special covenants or not. Under section 11726 of the aforesaid compilation, the term "conveyance" embraces every instrument in writing by which any interest in real estate is mortgaged. The Miller mortgage states that it shall be secondary and junior to any mortgage or mortgages thereafter placed upon said premises. It further provides that not more than one such prior mortgage shall be placed on any lot or lots.

For the reasons hereinbefore stated, we hold that the words "not to exceed in amount 50 per cent. of the total cost price of the lot or lots therein conveyed and of the building or buildings thereon situated" mean 50 per cent. of the cost of the lots, and, if buildings are erected on said lots, then an additional amount to the extent of 50 per cent. of the amount of the building or buildings.

A court of equity had jurisdiction to pass upon the priority of the mortgages, and all questions in regard to the right to issue the injunction now become moot because defendants have waived any objection, and in addition thereto, the injunction has been dissolved.

The question was raised by defendants at the hearing as to the exact amount still due under the Patterson mortgages, it being claimed that Patterson had not loaned the amount claimed to be due on his mortgages. Equity, having taken jurisdiction of the entire controversy, should determine all questions relating thereto, and, in addition to determining the priority of the parties, should determine the amount

due upon the Patterson mortgages, to which the Miller mortgage is subject.

Plaintiff claims that, in the event the mortgage is declared a prior lien, the court should determine the exact amount still owing on the Miller mortgage, and that, in so doing, Miller should be obliged to reduce the amount claimed to be due under the mortgage to the extent of the value of equities in lots and houses which had been released from the Patterson and Miller mortgages. The converse is also true.

Defendants made the claim on the hearing that Patterson claimed an amount still due on his mortgages in excess of the real amount due, but they filed no cross-bill to determine such amount, as they were claiming the priority of the Miller mortgage.

Therefore the decree in this case shall be without prejudice to the rights of defendants at their option to have the exact amount due under the Patterson mortgages determined. They shall have the right, within 30 days after the filing of this opinion, upon proper application, to secure a determination of the amount due under the Patterson mortgages and thus have all questions settled arising out of the dispute between the parties. Said right, however, shall not affect this decree, and any decree determining the amount due on the Patterson mortgages shall be a supplemental one.

The decree of the lower court is affirmed, with costs to plaintiff, and the case is remanded to the lower court for further action in accordance with this opinion.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.