## ROSSI ET AL. *v.* DOUGLAS ET UX.

[No. 21, October Term, 1953.]

*Decided November 10, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Patricia Warren,* with whom was *Albert Brick* on the brief, for the appellants.

*Hal C. B. Clagett,* with whom were *Jerrold V. Powers* and *Sasscer, Clagett & Powers* on the brief, for the appellees.

SOBELOFF, C. J., delivered the opinion of the Court.

The issue here presented for determination is the correct construction of a lease: does it include all or only a portion of a piece of vacant land in the rear of the store property mentioned in the instrument?

Appellants, Samuel Rossi, Biagio Ambrogi, and their wives, are the owners of three lots, 6, 7 and 8, in Suitland Corners, a subdivision in Prince George's County. We are immediately concerned with number 8,

a corner lot, and the other two come under consideration only in connection with certain arguments advanced by the parties on the basis of a comparison between the terms of the lease in question and leases of the adjacent lots.

On February 7, 1950, the owners made a lease to George A. Douglas and wife. The lease was drafted by the lessors' lawyer, but the lessees were also represented by counsel. The granting clause reads as follows: "That the Lessors . . . do hereby lease, grant and demise unto the Lessees, the premises known as 4682 Suitland Road, located on Lot No. 8, consisting of a store and vacant land in the rear thereof, a plat giving the specific and exact description shall be furnished by the Lessors and attached to this lease and made a part hereof hereafter, being in Subdivision, Suitland Corners, Prince George's County, Maryland . . ."

Lot No. 8 was improved by a one-story brick supermarket, which occupied only a part of the lot, approximately 45 feet of its frontage and 90 feet of its depth. In the rear, for a distance of approximately 80 feet, the land was vacant. The tenants desired a store larger than the existing building. It was stipulated in the lease as one of the considerations in fixing the rental that the lessees should within 90 days at their own expense erect an additional structure "which shall be approximately 20′ x 45′ on the land in the rear of the said premises." In this connection the lease again calls for a plat, and provides "that the land on which said additional building shall be built shall be described more accurately by a plat which shall be made hereafter and attached hereto as a part of said lease."

Promptly the lessees erected the annex to the store, which was opened for business on March 23, 1950. In the latter part of June, 1950, a plat, furnished by the lessors and signed by them, was brought to the lessees who also signed it.

This plat shows in dark shading the original building and the 20-foot addition. A 12-foot alley is shown,

unshaded, in the rear of this. An unshaded vacant area at the extreme rear of Lot No. 8, containing 1454 square feet, is also indicated. A legend appears on the plat, showing the latter area as "reserved for owners," along with the vacant land on the rear of lots 6 and 7.

Two years later, in June, 1952, the owners notified their tenants that they were about to construct a building on the rear portion of lot 8 (the above mentioned 1454 square feet) and on the rear of the adjoining lot 7 which they also owned. The tenants protested that, notwithstanding the plain indication of the plat they had signed, the lot was a part of their leased premises. When the lessors persisted in their plans, the lessees filed suit for a declaratory decree and an injunction. The Chancellor upheld the claim of the tenants that, despite the signed plat, the lease covers all of lot 8, and he decreed that the lessors should remove that portion of the building, at that time near completion, on the rear of the lot.

There is little room for disagreement between the parties as to the meaning of the provisions of the lease as illustrated by the plat which bears the signatures of the landlords and the tenants. Taken at face value, it is too plain for dispute that the effect of the two documents is to reserve to the lessors the area at the rear of lot number 8. The lessees' contention, summarized but, we think, not oversimplified, is that the lease was complete when executed; that its meaning, standing alone, is plain without the necessity of any plat; that the true meaning of its terms is that *all* of lot 8, that is, all the vacant land as well as the improved portion of lot 8 is granted the lessees; that a plat was intended merely, as descriptive information to depict graphically what can in any event be sufficiently gathered from the words of the lease; that the lease left nothing open between the parties for later determination by plat or otherwise; that the plat which was prepared by the lessors after the execution of the lease was not

intended and could not have been intended to vary or restrict the broad grant said to have been made by the lease; that as drawn the plat is a unilateral attempt of the lessors to diminish that grant, and is therefore ineffective. The plat actually furnished by appellants, the appellees' argument continues, is not the plat called for by the lease, since it conflicts with it, and is therefore to be disregarded.

To support their position lessees also suggest that the plat was merely intended to show the location of the annex to be built by the lessees, not to define a part of lot 8 which was to be excluded from the lease. They also make comparison between the granting clauses of the instant lease and those of the leases on lots 6 and 7, made to other tenants, from which they infer that a different formula would have been used by the lessors if they intended to reserve the area in dispute. They assert that this space is needed by them for parking purposes, and from this alleged necessity argue that there could have been no intention to exclude it from the grant of the lease.

Appellees claim they merely glanced at the plat, did not scrutinize it before signing, and did not know it reserved any part of lot 8; but it is not claimed that the appellees complained of the correctness of the plat at any time in the next two years.

The version of the appellants, on the other hand, is that the lease itself is not clear, and was intended to be made clear only by the plat for which it made provision; that the signed plat may not be disregarded; that it and the lease should be read together and there is then no ambiguity or uncertainty; that together they show a lease of the original store building and an additional twenty feet of land for the annex to be built in the rear, with the provision of a 12-foot alley, and the remaining forty feet at the extreme rear of the lot reserved to the owners. The disputed strip, together with the unimproved land at the rear of lots 6 and 7, was used for parking by customers and oc-

cupants of all three lots (6, 7 and 8) and the lessors say such use, though not mentioned in any of the leases, was permitted by them till they had need of the land.

It would needlessly prolong this opinion to undertake to answer all the ingenious arguments on the facts advanced by able and resourceful counsel, or to deal with each feature of the Chancellor's opinion, which follows closely the contentions of the appellees. These have all had our careful consideration, but we shall note only the more important points made and indicate the reasons for our conclusions.

The language of the lease, considered independently of the plat, does not sustain the appellees' claim that it is clearly and unambiguously a lease of all of lot 8. While the appellees point out several forms of words that the appellants' attorney might have chosen to indicate an intention to reserve the land in dispute, it is likewise true that the opposite intention could have been expressed in a formula more apt than that employed. The granting clause leases premises "located on Lot No. 8, consisting of a store and vacant land in the rear." It could have spoken simply of "Lot No. 8" if the exclusion of no part was intended. *"On* Lot No. 8" suggests that what is granted is not co-extensive with lot 8. It is notable that though the Chancellor's opinion speaks repeatedly of "the vacant land", the lease omits the definite article. The language is "vacant land in the rear thereof, a plat giving the specific and exact description shall be furnished by the lessors." We think that with the use of these words the appellants' claim is not untenable that only a portion of lot 8 was to be demised. If so, the provision for the furnishing of a plat takes on a greater significance than the appellees attach to it. It is meant to define the exact boundaries previously agreed upon.

Reference to the leases of the properties on the adjoining lots 6 and 7 does not support appellees. Here again, the lease under construction speaks of "vacant land", while the other leases speak of "the vacant

land". It is at least arguable that this difference in language exists precisely because only a portion of the land vacant when the present lease was signed was to be granted for the purpose of building thereon and the rest was to be reserved; whereas in the other leases when the entire space was meant to be reserved they referred to "the vacant land".

Moreover, granting away the rear of the lot 8 would have made the careful reservation of the rear of lots 6 and 7 practically useless, for the only street approach is over this part of lot 8.

The fact that the lease makes two separate provisions for a plat—one in the granting clause and the other in the paragraph relating to the annex to be constructed by the tenants—may also be not without significance. It goes far to weaken, if not to destroy, the appellees' postulate that the plat was needed merely to indicate the location of the new building and had no relation to the extent of the grant.

Doubtless the rear lot was a convenience to the appellees and their customers. Denial of this facility is a disadvantage, but the lessees never had exclusive use of the lot. They call it a "necessity" and its absence a "hardship". Ordinarily failure by a party competent to contract to provide a sound business situation will not provide a legal basis for relief. *McShane v. Hazlehurst,* 50 Md. 107, 131; *Vincent v. Palmer,* 179 Md. 365, 372, 19 A. 2d 183, 188; *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 220, 37 A. 2d 305, 308; *Kahn v. Janowski,* 191 Md. 279, 285, 60 A. 2d 519, 521. However this may be, necessity is relative, and many businesses, including supermarkets and groceries, operate without providing adjoining parking facilities for their patrons. Here the appellees do have such space in front and at the side of their building.

Even if inconvenience were the pivot upon which decision is to turn, we could not fairly disregard the inconvenience and hardship to lessors if they are de-

prived of a valuable asset, not only in the loss of a part of lot 8 but also the consequent loss in utility of the rear of lots 6 and 7.

The boundaries being indefinite, a plat may be resorted to in order to make them definite. When one writing signed by the parties refers to another it is to be interpreted as a part of the writing. *Gaybis v. Palm*, 201 Md. 78, 93 A. 2d 269; *Ray v. Eurice*, 201 Md. 115, 93 A. 2d 272; *Williston, Contracts*, sec. 628. Here a plat is called for; it is identified by the parties' signatures. The fact that the plat was not in existence when the lease was drawn is immaterial where it is later prepared and accepted by the parties. The plat supplies the exactness contemplated by the lease; the imprecise words are made precise by the drawing.

The rule that doubtful language is to be interpreted against the party who drafted the instrument is only a secondary rule of construction and perhaps should have but slight force in a situation where both parties are represented by counsel. It is entitled to none at all where, as here, it is provided that the uncertain description shall be made certain by a plat, which is in fact prepared and accepted by the parties. Cf. *Varnum v. Thruston*, 17 Md. 470, 496; *McEvoy v. Security Fire Ins. Co.*, 110 Md. 275, 280, 73 A. 157, 159; *Owens v. Graetzel*, 146 Md. 361, 370, 126 A. 224, 228; *Brownstein v. New York Life Ins. Co.*, 158 Md. 51, 54, 148 A. 273, 275; *New England Mutual Life Ins. Co. v. Hurst*, 174 Md. 596, 603, 199 A. 822, 826; *Pulaski v. Riland*, 199 Md. 426, 433, 86 A. 2d 907, 911; *Corbin, Contracts*, sec. 559; *Restatement of Contracts*, sec. 236 (d).

If, when the appellants supplied the plat, the appellees had raised objection to it as not in accordance with the understanding of the parties, we would have had a different case. It would then have been perfectly in order to say, as the appellees' brief says, that the appellants may not unilaterally modify the joint understanding. But the appellees raised no such contention; they signed the plat, knowing, as Mr. Douglas admitted

at the hearing, that it was to become a part of the lease.

There is no claim here of fraud or duress or mutual mistake, and it is well established that in the absence of these features one having the capacity to understand a written document who reads it, or, without reading it or having it read to him, signs it, is bound by his signature. *Spitze v. B. & O. R. R.,* 75 Md. 162, 23 A. 307; *Columbia Paper Bag Co. v. Carr,* 116 Md. 541, 82 A. 442; *McGrath v. Peterson,* 127 Md. 412, 96 A. 551; *Western Maryland Dairy v. Brown,* 169 Md. 257, 262, 181 A. 468, 471; *Gardiner v. Gardiner,* 200 Md. 233, 88 A. 2d 481; *Ray v. Eurice, supra; Williston, Contracts,* sec. 90 A; *Restatement of Contracts,* sec. 70. Indeed Williston says that even if an illiterate executes a deed under a mistake as to its contents, he is bound both at law and in equity if he did not require it to be read to him or its object explained. This is everywhere the rule. *Williston, Contracts,* sec. 1577.

Far from being illiterate or otherwise incapable of understanding the effect of his signature, Mr. Douglas is a competent business man and a graduate civil engineer who practiced that profession for a number of years, and is more accustomed than most men to reading and interpreting a plat. There is a striking indication in the record that he has a good appreciation of the importance of signatures, for when he wanted permission to surface the parking space at the front and side of lot 8, which was being used by the general public and customers of all the nearby stores, he was careful to draw up a document and procure the lessors' signatures.

The appellees make other plausible arguments which need not be detailed here. No less persuasive opposing arguments are advanced by the appellants. Both sides draw freely on speculation. It is sufficient to say that none of these considerations, or all of them together, even if resolved in favor of the appellees, can be considered so cogent or compelling as to overcome the

undeniable fact of assent evidenced by the parties' signatures on the plat two years before the present controversy arose. This assent is convincing proof that the plat was in fact in accordance with the actual understanding of the parties when the lease was written. We conclude that the decree should be reversed.

*Decree reversed and bill of complaint dismissed with costs to appellants.*