**ASSURANCE COMPANY OF AMERICA, INC., a New York Corporation, Plaintiff,**

v.

**JAY–MAR, INC., d/b/a Absecon Home Center, a New Jersey Corporation, Defendant/Third–Party Plaintiff,**

v.

**Johnston Insurance Agency, Inc., Third–Party Defendant.**

**Civil Action No. 97–4825 (SSB).**

United States District Court, D. New Jersey.

Feb. 10, 1999.

James P. Lisovicz, Mcelroy, Deutch & Mulvaney, Morristown, NJ, Attorney for Plaintiff Assurance Company of America, Inc.

Alan C. Milstein, Sherman, Silverstein, Kohl, Rose & Podolsky, P.C., Pennsauken, NJ, Attorney for Defendant/Third–Party Plaintiff Jay–Mar, Inc.

Michael J. O'Mara, Crawshaw & Mayfield, Cherry Hill, NJ, Attorney for Third–Party Defendant Johnston Insurance Agency, Inc.

BROTMAN, District Judge.

Presently before the Court is the motion of plaintiff Assurance Company of America, Inc. ("Assurance") and the cross-motion of third-party defendant Johnston Insurance Agency, Inc. ("Johnston") for summary judgment pursuant to Fed. R.Civ.P. 56.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In 1990, Jay–Mar, Inc. ("Jay–Mar"), d/b/a Absecon Home Center, with its principals Jay and Marilyn Weisman, purchased the premises located at 401 White Horse Pike and opened a True Value Hardware Store. The premises is located at the intersection of Route 30 (Whit-

ehorse Pike) and Route 9 in Absecon, New Jersey. Through the insurance brokering services of Johnston Insurance Agency, Inc. ("Johnston"), Jay–Mar purchased an insurance policy from Assurance effective from January 27, 1997 through January 27, 1998.

Due to heavy rains on August 21, 1997, water entered the Jay–Mar premises from the ground level, causing substantial damage. According to Jay–Mar's liability expert, Charles J. Penza, P.E., the rainstorm which damaged the Jay–Mar premises was classified as twice the magnitude of a "one in a hundred year" event.

Jay–Mar reported its loss to Johnston, thereby requesting coverage from Assurance. Jay–Mar believed that the damage its property sustained was due to the backup or overflow of rainwater from nearby storm sewers, a cause of loss covered by its insurance policy. Believing that the damage was caused by surface water flooding, a cause of loss not covered by Jay–Mar's insurance policy, Assurance denied Jay–Mar's claim for coverage.

On September 30, 1997, Assurance filed this action against Jay–Mar seeking a declaratory judgment that it was not liable for Jay–Mar's loss. On December 18, 1997, Jay–Mar filed an answer, a counterclaim against Assurance, and a third-party complaint against Johnston. On February 1, 1999, Assurance filed a motion for summary judgment and Johnston filed a cross-motion for summary judgment.

## II. *DISCUSSION*

### A. STANDARD FOR SUMMARY JUDGMENT

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Fed.R.Civ.P. 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69

n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### B. ASSURANCE'S LIABILITY FOR JAY–MAR'S LOSS

#### 1. The Insurance Policy

The insurance policy at issue in this case contains the following exclusion provisions:

II. COVERED CAUSES OF LOSS RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE unless the loss or damage is excluded or limited as described below:

A. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . . .

g. Water -

(1) (a) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

. . . . .

(d) Water that backs up or overflows from a sewer, drain or sump but only if Back–Up of Sewers and Drains is show as "Excluded" in the Declarations.

Lisovicz Cert., Exh. C. Both parties agree that Back–Up of Sewers and Drains is not excluded in the policy's Declarations. Therefore, loss caused by such backup is covered by the policy.

**2. Interpreting the Insurance Policy**

New Jersey courts adhere to the following guidelines when interpreting insurance policies:

In interpreting insurance contracts the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all of its parts so as to accord a reasonable meaning to its terms. When the terms of the policy are clear and unambiguous the court must enforce the contract as it finds it; the court cannot make a better contract for the parties than they themselves made. Rules of construction favoring the insured cannot be employed to disregard the clear intent of the policy language.

However when an ambiguity exists, it must be resolved against the insurer. If the controlling language will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied. Accordingly, such contracts are to be interpreted in a manner that recognizes the reasonable expectation of the insured. Coverage clauses should be interpreted liberally, whereas those of exclusion should be strictly construed. Even if a particular phrase or term is capable of being interpreted in the manner sought by the insurer, where another interpretation favorable to the insured reasonably can be made that construction must be applied.

*Stone v. Royal Ins. Co.,* 211 N.J.Super. 246, 248–49, 511 A.2d 717, 718–19 (App. Div.1986) (citations and internal quotation marks omitted). Assurance claims that the policy it issued Jay–Mar is unambiguous: it does not cover loss due to flood or surface water regardless of whether the flooding and surface water occur concurrently or sequentially with a covered cause of loss like sewer or drain backup. Jay–Mar does not appear to dispute the contract's clarity.[1] Instead, it objects to enforcement of the contract on public policy grounds and disputes the actual cause of its loss.

**3. Public Policy Objection to the Insurance Policy's Enforcement**

■ Jay–Mar's public policy objection arises out of the language prohibiting re-

---

1. Johnston argues that the insurance policy is ambiguous, based on language contained in a provision of the policy that excludes from coverage loss due to "weather conditions [that] contribute in any way with a cause or event excluded in paragraph 1. above [including flood and surface water] to produce the loss or damage." The Court rejects this argument.

covery where an included cause of loss [2] occurs "concurrently or in any sequence to the [excluded cause of] loss." Although the New Jersey Supreme Court has not yet determined whether the occurrence of an excluded cause of loss simultaneously or sequentially with an included cause of loss bars an insured from recovery, New Jersey's lower courts have addressed both situations. In *Brindley v. Firemen's Ins. Co. of Newark,* the court determined that "[l]oss due to the effect of causes both within and outside the coverage, operating conjointly, is generally considered not recoverable." *Brindley v. Firemen's Ins. Co. of Newark,* 35 N.J.Super. 1, 5, 113 A.2d 53, 56 (App.Div.1955). Only when a factfinder can determine "without resort to sheer conjecture" which part of the damage was due to the included cause of loss can the insured recover. *Id.; see also Newman v. Great Am. Ins. Co.,* 86 N.J.Super. 391, 403, 207 A.2d 167, 175 (App.Div. 1965) (following *Brindley* ). Where included and excluded causes of loss occur concurrently, it appears that New Jersey's lower courts have not been predisposed to find coverage. The Court cannot assume that New Jersey's highest court would find otherwise. Therefore, the Court rejects Jay–Mar's argument that the part of the insurance policy provision excluding from coverage losses occasioned by simultaneously occurring included and excluded causes violates the state's public policy.

■ The part of the insurance policy provision which refers to sequential causes of loss gives the Court more pause. As with concurrent causes of loss, the New Jersey Supreme Court has not addressed this issue. New Jersey's lower courts, however, have determined that an insured deserves coverage where the included cause of loss is either the first or last step in the chain of causation which leads to the loss. *See Franklin Packaging Co. v. Cal. Union Ins. Co.,* 171 N.J.Super. 188, 191,

408 A.2d 448, 449 (App.Div.1979) (quoting 5 Appleman, Insurance Law and Practice § 3083 at 309–311 (1970) for the proposition that "recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or [w]here the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk."); *Stone v. Royal Ins. Co.,* 211 N.J.Super. 246, 251, 511 A.2d 717, 720 (App.Div.1986) (following *Franklin Packaging* ); *Ariston Airline & Catering Supply Co., Inc. v. Forbes,* 211 N.J.Super. 472, 487, 511 A.2d 1278, 1286–87 (Law Div.1986) (following *Franklin Packaging* ). This is broader coverage than that provided by the courts in a number of other states. Those courts have held that where the insured risk is the first step in the chain of causation which leads to a loss, the loss is covered; this is known as the "efficient proximate cause" doctrine. *See Schroeder v. State Farm Fire and Cas. Co.,* 770 F.Supp. 558, 561 (D.Nev.1991) (explaining the "efficient proximate clause" doctrine). Despite the New Jersey lower courts' favorable treatment of insureds who suffer sequential causes of loss, no New Jersey court has addressed whether an exclusion provision dealing with sequential causes of loss like the one at issue in the present case violates the state's public policy. Therefore, the Court must look outside this jurisdiction for guidance.

Sequential loss provisions have been held to violate public policy—specifically, the "efficient proximate cause" doctrine— in both California and Washington. *See Howell v. State Farm Fire and Cas. Co.,* 218 Cal.App.3d 1446, 1456, 267 Cal.Rptr. 708, 714–15 (1990); *Safeco Ins. Co. of Am. v. Hirschmann,* 112 Wash.2d 621, 627, 773 P.2d 413, 416 (1989). The grounds on which these courts based their decisions, however, are inapplicable to the present case. In *Howell,* the California appellate

---

**2.** The Court will refer to causes of loss included in the insured's coverage as "included causes of loss" or "included causes." Causes of loss that are excluded from the insured's coverage will be referred to as "excluded causes of loss" of "excluded causes."

court found that it would violate the state Insurance Code to permit a property insurer to deny coverage when an insured peril was the "efficient proximate cause" of the loss. *Howell,* 218 Cal.App.3d at 1456, 267 Cal.Rptr. at 714. In *Safeco,* the Washington Supreme Court based its determination on the fact that the state's highest court had previously adopted the "efficient proximate cause" doctrine and had also previously determined that insurers could not circumvent the doctrine by including language to that effect in their policies. *See Safeco,* 112 Wash.2d at 624, 773 P.2d at 414. In New Jersey, there is no statutory requirement that insurers provide coverage in accordance with the "efficient proximate cause" doctrine, nor has the New Jersey Supreme Court adopted the doctrine and determined that insurers cannot contract around it. These cases, therefore, do not persuade the Court that the New Jersey Supreme Court would find a violation of public policy where parties to an insurance contract agree to exclude coverage for losses occasioned by a sequence of causes, some of which are included and some of which are not.

█ In addition, the Court recognizes that most courts which have addressed this issue have found that exclusionary language designed to avoid the "efficient proximate cause" doctrine is enforceable. *See TNT Speed & Sport Center, Inc. v. Am. States Ins. Co.,* 114 F.3d 731, 733 (8th Cir.1997) (applying Missouri law); *Front Row Theatre, Inc. v. American Mfrs. Mut. Ins. Cos.,* 18 F.3d 1343, 1347 (6th Cir.1994) (applying Ohio law); *Schroeder,* 770 F.Supp. at 561; *State Farm Fire and Cas. Co. v. Bongen,* 925 P.2d 1042, 1045 (Alaska 1996); *Millar v. State Farm Fire and Cas. Co.,* 167 Ariz. 93, 97, 804 P.2d 822, 826 (Ariz.Ct.App.1990); *Kane v. Royal Ins. Co.,* 768 P.2d 678, 684 (Colo.1989); *Ramirez v. Am. Family Mut. Ins. Co.,* 652 N.E.2d 511, 516 (Ind.Ct.App.1995); *Toumayan v. State Farm Gen. Ins. Co.,* 970 S.W.2d 822, 826 (Mo.Ct.App.1998); *Kula v. State Farm Fire and Cas. Co.,* 212 A.D.2d 16, 20–21, 628 N.Y.S.2d 988, 991 (1995); *Alf v. State Farm Fire & Cas. Co.,* 850 P.2d 1272, 1277 (Utah 1993); *State Farm Fire and Cas. Co. v. Paulson,* 756 P.2d 764, 769 n. 2 (Wyo.1988). Because the New Jersey Supreme Court has not given this Court reason to believe otherwise, this Court finds that New Jersey would follow the majority rule regarding loss due to sequential causes: there is no violation of public policy when parties to an insurance contract agree that there will be no coverage for loss due to sequential causes even where the first or the last cause is an included cause of loss. Therefore, if Jay–Mar's loss was caused in any part by flood or surface water, it may not recover from Assurance.

### 4. Factual Dispute Regarding the Cause of Jay–Mar's Loss

█ Not surprisingly, the parties dispute the cause of Jay–Mar's loss. Jay–Mar argues that its loss resulted solely from the backup of the sewers and drains. Its expert, Charles J. Penza, P.E. of Charles J. Penza & Associates, writes that "the water damage to [Jay–Mar's] property was the direct result of an over capacity condition or partial blockage of drainage systems [ … s]ince the drainage systems were overloaded with a backup of the storm sewer and caused the storm waters to backup and flood the subject property." Lisovicz Cert., Exh. P at 6. Assurance argues that flooding and surface waters were "the primary, if not sole cause of Jay–Mar's damage." Assurance's Summary Judgment Brief at 14. Its expert, Morton H. Lerner of Douglas G. Peterson & Associates, Inc., writes that "the flooding condition of the interior and exterior of the Jay–Mar property occurred from the accumulation of rainfall, limited storm water drainage disposal, and the lack of construction of the building on an elevated site." Lisovicz Cert., Exh. O at 11. According to Assurance's expert, it was not the backup or overflow from the storm sewers that caused Jay–Mar's loss but the limited rainwater disposal these storm

sewers provided. The discrepancy between these expert reports creates a genuine issue of material fact which must be decided by the factfinder in this case.

### III. CONCLUSION

For the foregoing reasons, the Court will deny both the summary judgment motion filed by Assurance and the cross-motion filed by Johnston. The Court will enter an appropriate order.

### ORDER

**THIS MATTER** having come before the Court on the motion of plaintiff Assurance Company of America, Inc. ("Assurance") and the cross-motion of third-party defendant Johnston Insurance Agency, Inc. ("Johnston") for summary judgment pursuant to Fed.R.Civ.P. 56; and

The Court having reviewed the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this *10th* day of February, 1999 hereby

**ORDERED** that the motion of plaintiff Assurance and the cross-motion of third-party defendant Johnston for summary judgment are **DENIED.**