Theresa **BAO**, Plaintiff,

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,** Defendant.

Civil No. JFM 07–2671.

United States District Court, D. Maryland.

Feb. 27, 2008.

Luiz R.S. Simmons, Auerbach and Simmons, Silver Spring, MD, for Plaintiff.

Mark Joseph Stiller, V. Timothy Bambrick, Niles Barton and Wilmer LLP, Baltimore, MD, for Defendant.

## OPINION

J. FREDERICK MOTZ, District Judge.

Plaintiff Theresa Bao has brought suit against defendant Liberty Mutual Fire Insurance Company ("Liberty") alleging breach of contract arising out of a denial of insurance coverage. (Compl. ¶¶ 6–7.) Plaintiff seeks damages in the amount of $85,000 plus interest and the costs of this action. (*Id.* ¶ 9.) Defendant has moved for summary judgment, and plaintiff's opposition and defendant's reply have followed. For the reasons detailed below, I will grant defendant's motion.

### I.

The evidence on the summary judgment record is as follows. On or about June 2, 2006, a strong wind and rain storm hit the Baltimore region, and a substantial amount of water entered plaintiff's home. (Pl.'s Opp'n Mem. at 1.) Prior to the loss, plaintiff had entered into an all risk insurance policy with Liberty, entitled Liberty Mutual H03 Homeowners Deluxe Policy ("the policy"). (*Id.*, Ex. 6, Liberty June 27, 2006 Denial Letter). The policy had an effective period from March 22, 2006 through March 22, 2007, and was thus in effect at the time of the loss. (*Id.*) Immediately following the loss, plaintiff contacted Liberty, which allegedly provided the name and number for "Service Master Baltimore," a Liberty-preferred clean-up contractor. (*Id.* at 2.) Service Master Baltimore, which plaintiff hired to assist in the clean-up of the property damage on June 4, 2006, reported that the "[g]lass door broke[,] causing rain water to come into the home." (*Id.* (citing Ex. 2, Service Master Baltimore Invoice).)

Plaintiff's and Liberty's licensed certified public adjusters met to inspect the damage to the property on June 13, 2006.[1]

---

1. Plaintiff's adjuster, Jeffrey Gould, also inspected the property on June 9, 2006. (Gould Aff. ¶ 6.)

(*Id.* at 3–4.) Plaintiff's adjuster, Jeffrey Gould of American Claims Management Services ("ACMS"), determined that "[t]he loss followed a wind and rainstorm and was the result of rainwater entering the basement of the property as a consequence of wind damaging a sliding glass door." (Gould Aff. ¶ 5.) More specifically, Gould reported that damage to the door frame at the height of approximately three feet indicated that "the loss [wa]s due to an object blown by the wind into the sliding glass door." (*Id.* ¶¶ 8–9.) As a result, according to Gould, water entered the basement both by way of rain that continued to fall during the duration of the storm, and a pool of rain that had gathered at the bottom of the basement stairwell. (*Id.* ¶ 8.)

Liberty's adjuster, Tim Iannuzzi of North American Claims Specialists ("NCAS"), concluded after his June 13, 2006 inspection that the glass door was not broken by an object blown by the wind, but by pressure exerted on the glass door by accumulated water in a basement stairwell. (Iannuzzi Aff. ¶¶ 8–9.) Iannuzzi reported that physical evidence at the scene indicated that "approximately 10–15 inches of water accumulated in the bottom of the basement walkout steps[,] [while] [i]nside the home there were water marks approximately 10–12 inches high on the walls and door frames."[2] (*Id.* ¶ 9.) Because Liberty concluded that the pressure exerted by the excessive water caused the glass to break, it denied plaintiff's claim on June 27, 2006. (Pl.'s Opp'n Mem., Ex. 6.) Liberty cited

SECTION I—EXCLUSIONS to justify its denial:

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence of loss . . .

c. Water Damage, meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

(*Id.* (citing Ex. 1, "Insurance Policy" at 8).)

## II.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A material fact is one that may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts will be construed in the light most favorable to, and all justifiable inferences will be drawn in favor of, the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

---

**2.** Iannuzzi reported that during the inspection, "Mr. Gould stated that the loss was due to surface water entering the basement through the sliding glass door." (Iannuzzi Aff. ¶ 7.) Gould denies stating that "surface water" caused the loss, reiterating that wind damage and the resulting rain that entered the premises were the causes. (Gould Aff. ¶ 13.) Furthermore, Gould alleges that Ian-

nuzzi refused to furnish any factual justification or documentation to support his conclusions, and that Liberty denied plaintiff's insurance claim on June 27, 2006 prior to any submission of the personal property damages estimates. (*Id.* ¶ 10–11.) Because I conclude *infra* that "surface water" was a cause of the loss, these disputed facts are ultimately not material.

*Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■■■ Under Maryland law, "insurance policies are interpreted in the same manner as contracts generally." *Catalina Enters. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir.1995) (citing *Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 607 A.2d 537, 539 (1992)). The primary purpose "in construing insurance contracts, like all contracts, is to ascertain and give effect to the intention of the parties at the time of contracting." *Id.* (citing *Aragona v. St. Paul Fire and Marine Ins. Co.*, 281 Md. 371, 378 A.2d 1346, 1348 (1977)).

■■■ Insurance policies "are not in the first instance construed most strongly against the insurer." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir.1998) (citing *Collier*, 607 A.2d at 539). Rather, Maryland courts "interpret insurance policies as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *Id.* The court may also look to "the character of the contract, its object and purposes, and the factual circumstances of the parties at the time of the execution." *Catalina*, 67 F.3d at 65. "If the language of the contract is ambiguous, extrinsic evidence may be consulted to determine the intention of the parties." *Sallie v. Tax Sale Investors, Inc.*, 149 Md. App. 141, 814 A.2d 572, 578 (Md.Ct. Spec.App.2001). On the other hand, "clear and unambiguous language ... must be enforced as written and may not yield to what the parties later say they meant." *Id.* (citing *Bd. of Trs. of State Colls. v. Sherman*, 280 Md. 373, 373 A.2d 626, 629 (1977)).

### III.

■■ The issue on summary judgment is whether Liberty has established as a matter of law that plaintiff's loss is excluded pursuant to the policy. An insurer has the burden of establishing that the policy excludes a particular loss. *Nat'l Elec. Mfrs. Assoc. v. Gulf Underwriters Ins. Co.*, 162 F.3d 821, 824 (4th Cir.1998). However, if the insurer successfully establishes that the loss is excluded, the burden shifts to the insured to demonstrate that the damage falls within an exception to the exclusion. *See Simkins Indus., Inc. v. Lexington Ins. Co.*, 42 Md.App. 396, 401 A.2d 181, 184 (Md.Ct.Spec.App.1979); *McEvoy v. Sec. Fire Ins. Co.*, 110 Md. 275, 73 A. 157, 159–60 (1909).

Liberty contends that the policy expressly excluded plaintiff's loss. (Def.'s Mem. at 7.) Plaintiff's policy with Liberty excluded coverage "for loss caused directly or indirectly by [water damage,] ... regardless of any other cause or event contributing concurrently or in any sequence of loss." (Insurance Policy at 8 (Section I—Exclusions(1.)(c)).) The policy defined "water damage" in relevant part as "[f]lood, *surface water*, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." (*Id.* (Section I(1.)(c)(1)) (emphasis added).) Plaintiff's adjuster, Gould, reported, and plaintiff has argued, that the loss was caused in part by both "rain that continued to fall for the duration of the storm" *and* "a pool of rain that had gathered at the bottom of the stairwell." (Gould Aff. ¶ 8; Pl.'s Opp'n ¶ 7; Pl.'s Opp'n Mem. at 2, 5.) Liberty does not dispute that these were the causes. (Def.'s Reply at 2.) Accordingly, the parties' textual arguments center around whether these sources of water constitute "water damage" as defined in the policy.

Liberty argues persuasively that a pool of rainwater constitutes "surface water," which the policy included under its definition of "water damage." (*Id.* at 2–3.) Maryland courts have held that "surface wa-

ter [is] caused by rain or melting snow." *City of Cumberland v. Willison,* 50 Md. 138, 1878 WL 6579 at *6 (1878); *see also Mateer v. Reliance Ins. Co.,* 247 Md. 643, 233 A.2d 797, 799 (1967) (holding in an insurance policy dispute case that "surface waters are those which are produced by rainfall, melting snow or springs"). Other jurisdictions have also defined "surface water" to include a pool of rainwater. *See T.H.E. Ins. Co. v. Charles Boyer Children's Trust,* 455 F.Supp.2d 284, 296–97 (M.D.Pa.2006) ("[S]urface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence.") ("[R]ainfall that collects outside of a building and subsequently flows into that building is 'surface water' for purposes of the surface water exclusion."); *O'Neill v. State Farm Ins. Co.,* No. 94–3428, 1995 WL 214409, at *3 (E.D.Pa. Apr. 7, 1995) ("Surface water is water which has diffused over the surface of the ground and is derived from falling rain or melting snow.") (internal quotation marks omitted); *State Farm Fire & Cas. Co. v. Paulson,* 756 P.2d 764, 767 (Wyo. 1988) (citing a hydrology expert's answer that "after rain falls to the ground ... it becomes either surface water or if it infiltrates it becomes underground water").

Plaintiff argues in opposition that because "falling rain" or "rainwater" are "specifically not listed as part of the water damage definition in the policy," it is ambiguous whether a pool of rain that has collected at the bottom of the stairwell is covered under the "water damage" definition.[3] (Pl.'s Opp'n Mem. at 9.) Although

plaintiff is correct that "rain" is not specifically included in the policy's definition of "water damage," in light of the case law discussed *supra,* I am persuaded that a pool of rainwater constitutes "surface water," which specifically falls under the definition of "water damage." Accordingly, because "water damage" was "directly or indirectly" the cause of plaintiff's loss, I conclude that the loss fell under the exclusionary clause of the policy. (*See* Insurance Policy at 8.)

■ Notwithstanding the applicability of the exclusionary clause, Plaintiff makes two arguments for insurance coverage in the instant case. First, plaintiff argues that the exclusionary clause should not apply because the loss from water damage was caused by the "direct force of wind," and thus is "specifically included as a covered peril in another section of the contract." (Pl.'s Opp'n Mem. at 9.) Plaintiff cites the following language:

SECTION I—PERILS INSURED AGAINST:

COVERAGE C—PERSONAL PROPERTY ...

2. Windstorm or Hail.

This peril does not include loss to the property contained in a building caused by *rain,* snow, sleet, sand or dust *unless the direct force of wind* or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet sand, or dust enters through this opening.

(Insurance Policy at 7 (emphasis added).)

Plaintiff has, however, overlooked the critical language in the ellipses directly following "COVERAGE C—PERSONAL

---

**3.** Plaintiff initially points out that Liberty has justified its denial of coverage by describing the cause separately as "ground water" and "surface water." (Pl.'s Opp'n Mem. at 9 (citing Ex. 4, Liberty March 24, 2006 Denial Letter; Ex. 6, Liberty June 27, 2006 Denial Letter).) Although this is true, because I conclude that the cause of the loss constituted "surface water," Liberty's June 27 Denial Letter was accurate (even if its March 24, 2006 denial letter was not).

PROPERTY": "We insure for direct physical loss to the property described in Coverage C caused by a peril listed below *unless the loss is excluded in SECTION I—EXCLUSIONS.*" (Insurance Policy at 7 (emphasis added).) Accordingly, even if plaintiff's loss is covered under the "Perils" section that plaintiff cites, the policy's language makes clear that the loss is not covered by the policy if, as is the case here, it falls under a specific exclusion.

■ Second, plaintiff argues that even if the exclusionary clause is found to be applicable, "rules of causation would still effectuate coverage for damage in the current case." (Pl.'s Opp'n Mem. at 10.) Specifically, plaintiff asserts that this court should follow an "efficient proximate cause" analysis, under which "the cause that had set the other one in motion, the predominant cause, would be the cause to which the loss would be attributed."[4] (*Id.*) According to plaintiff, only after wind (the predominant cause) allegedly blew an object into the glass door did the door break, setting in motion the flooding of rainwater (the other cause) into the basement. Thus, plaintiff contends that the "Perils" section covers the loss at issue notwithstanding the applicability of the exclusionary clause because the "direct force of wind" was the efficient proximate cause. (*Id.*)

Plaintiff's argument requires the rejection of the "concurrent causation" clause in the policy's exclusion section, which states that where there is an excluded cause, Liberty does not cover loss "regardless of any other cause or event contributing concurrently or in any sequence of loss." (Insurance Policy at 8.) Plaintiff concedes that in *third party claims,* Maryland courts have upheld the validity of "concurrent causation" clauses, while rejecting an "efficient proximate cause" analysis: "'proper focus remains on the language of the exclusionary clause, not principles of causation, and stands for the proposition that an exclusionary clause may apply even where one of the causes contributing to the loss was not within the exclusion.'" (Pl.'s Opp'n Mem. at 10 (quoting *Nationwide Mut. Ins. Co. v. Nash,* No. 07–209, 2007 WL 1774487, at *11, 2007 U.S. Dist. LEXIS 43954, at *32 (D.Md. June 18, 2007) (Bennett, J.) (citing *Aragona,* 378 A.2d at 1351; *N. Assur. Co. of America v. EDP Floors, Inc.,* 311 Md. 217, 533 A.2d 682, 688 (1987))).) However, because Maryland courts have not yet addressed the issue of causation in *first party claims* with respect to exclusionary clauses in insurance contracts, plaintiff asserts that I should apply the "efficient proximate cause" analysis in the instant case. (*Id.*)

Plaintiff cites case law from California, West Virginia, and Washington supporting the application of the "efficient proximate cause" analysis. In *Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704, 710–11 (1989), the Supreme Court of California held that because the case involved a first party claim for property damage, not a third party claim for tort liability, coverage should be determined by an efficient proximate cause analysis if the loss is caused by

---

**4.** As one treatise explains, "the efficient proximate cause rule permits a recovery under the policy where the loss occurs due to a loss from a covered peril which also sets into motion a chain of events occurring in an unbroken sequence culminating in damage from an excluded peril." E. Holmes, 2 Appleman on Insurance 2d § 6.2 (1996) (cited in *Murray v. State Farm Fire and Cas. Co.,* 203

W.Va. 477, 509 S.E.2d 1, 11 n. 10 (1998)). "The efficient proximate cause is the risk that sets others in motion. It is not necessarily the last act in a chain of events, nor is it the triggering cause. The efficient proximate cause doctrine looks to the quality of the links in the chain of causation. The efficient proximate cause is the predominating cause of the loss." *Murray,* 509 S.E.2d at 12.

concurrent causes. Although coverage for loss caused by earth movement was expressly excluded under the all risk homeowner's insurance policy, the policy did not exclude coverage for contractor negligence. *Id.*, 257 Cal.Rptr. 292, 770 P.2d at 705–06. The California Supreme Court reversed the trial court's conclusion that simply because contractor negligence was a concurrent cause of plaintiff's loss, the loss was covered. *Id.*, 257 Cal.Rptr. 292, 770 P.2d at 714–15. Rather, the Court held that coverage exists in first party claims cases only if the covered concurrent cause is the efficient proximate cause, or predominant cause, of the loss. *Id.* The Court explained:

> [T]he reasonable expectations of the insurer and the insured in the first party property loss portion of a homeowner's policy—as manifested in the distribution of risks, the proportionate premiums charged and the coverage for all risks except those specifically excluded—cannot reasonably include an expectation of coverage in property loss cases in which the efficient proximate cause of the loss is an activity expressly *excluded* under the policy. Indeed, if we were to approve of the trial court's directed verdict, we would be requiring ordinary insureds to bear the expense of increased premiums necessitated by the erroneous expansion of their insurers' potential liabilities.

*Id.*, 257 Cal.Rptr. 292, 770 P.2d at 711 (emphasis in original).

Similarly, in *Murray*, 509 S.E.2d at 4, the West Virginia Supreme Court of Appeals reversed the circuit court's order granting summary judgment for the insureds because the issue of whether the policies' earth movement exclusions applied was a factual one to be determined at trial. The Court held that "when examining whether coverage exists for a loss under a first-party insurance policy when the loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss. No coverage exists for a loss if the covered risk was only a remote cause of the loss, or ... if the excluded risk was the efficient proximate cause of the loss." *Id.* at 12.

Finally, Washington courts have also applied the efficient proximate cause analysis in first party claims cases. In *Kish v. Insurance Co. of North America*, 125 Wash.2d 164, 883 P.2d 308, 313 (1994), the Supreme Court of Washington clarified that a jury should only be given the responsibility of determining the efficient proximate cause for purposes of determining coverage if there are two distinct causes, one of which was covered by the policy and one of which was excluded. Because there was only one cause of the damage (flood induced by rain), and flood was a peril within the "clear language of the exclusion," the court reversed the trial court and found for the insurer. *Id. See also Sunbreaker Condominium Ass'n v. Travelers Ins. Co.*, 79 Wash.App. 368, 901 P.2d 1079, 1081 (1995) (reversing the trial court's summary judgment order for insured because, although it agreed with the trial court that the policy characterized rain and dry rot as distinct perils, there was an issue of material fact as to the efficient proximate cause of the insured's loss that was for a jury to determine).

In contrast, defendant cites other jurisdictions—namely Pennsylvania, Virginia, Wyoming, Missouri—that have upheld insurance policies' concurrent causation clauses, and rejected the efficient proximate cause rule, in first party property claims. In *T.H.E. Insurance Co.*, the court ordered summary judgment for the insurer because the insurance policy did not cover mud and water damage to a bowling alley following a heavy rainstorm. 455 F.Supp.2d at 284. The court inter-

preted a lead-in clause identical to the one in the instant case, which stated that the insurer would not pay for "loss or damage caused directly or indirectly" by water damage, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 291. The court explained: "Read literally, the lead-in clause precludes coverage of a loss so long as a specifically enumerated exclusion contributed in some way to the loss. Under this literal interpretation of the lead-in clause, the degree to which an excluded factor contributed to the loss is irrelevant." *Id.*

The *T.H.E. Insurance Co.* court upheld the concurrent causation clause to exclude insured's loss from coverage, rejecting insured's argument that Pennsylvania law had embraced the efficient proximate cause doctrine. *Id.* at 292–93. Although there was no Pennsylvania Supreme Court decision directly on point, the court cited numerous other jurisdictions that had held that the efficient proximate cause doctrine did not apply in the face of a similarly expansive qualifying lead-in clause. *Id.* at 293 (citing *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 685 (Colo.1989); *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130–31 (D.C.2001); *TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*, 114 F.3d 731, 733–34 (8th Cir.1997); *Assurance Co. of America v. Jay–Mar, Inc.*, 38 F.Supp.2d 349, 354 (D.N.J.1999)). In conclusion, the court held that "[t]he language of the lead-in clause ... by definition negates the efficient proximate cause doctrine." *Id.*

Similarly, in *Lower Chesapeake Associates v. Valley Forge Insurance Co.*, 260 Va. 77, 532 S.E.2d 325 (2000), the Supreme Court of Virginia upheld a concurrent causation clause where the damage to certain docks in a marina was the result, at least in part or in combination, of one or more excluded causes. The Court held that

there was no coverage for the loss because "[u]nder the plain terms of Section B(1), coverage is excluded under the policy if a loss is caused 'directly or indirectly' by one of the enumerated causes or events, 'regardless of any other cause or event that contributes concurrently or in any sequence' to the loss." *Id.* at 331; *see also Paulson*, 756 P.2d at 764 (holding that the damage to a home resulting from the entrance of hail, a covered loss, and water into the basement of the house after a severe storm was not covered by the policy because the concurrent causation clause excluded water damage).

In *TNT Speed & Sport Center, Inc. v. American States Insurance Co.*, 114 F.3d 731 (8th Cir.1997), the Eighth Circuit affirmed the district court's order of summary judgment for the insurer, which held that because the policy's water damage exclusion reflected the intent to contract out of the application of the efficient proximate cause doctrine, the exclusion barred coverage. Because there was no controlling Missouri case law directly addressing the issue, the district court reviewed decisions from other states' highest courts to determine the approach the Missouri Supreme Court would most likely have taken to resolve the issue. *Id.* at 733. The Eighth Circuit affirmed the district court's conclusion that "the most analogous and more persuasive cases from other states [had] recognize[d] that parties may contract out of application of the efficient proximate cause doctrine." *Id.* (citing *Alf v. State Farm Fire and Cas. Co.*, 850 P.2d 1272 (Utah 1993); *Kane*, 768 P.2d at 678; *Paulson*, 756 P.2d at 764; *Schroeder v. State Farm Fire and Cas. Co.*, 770 F.Supp. 558 (D.Nev.1991) (applying Nevada law); *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 804 P.2d 822 (Ariz.Ct.App.1990)).

Because the question of whether the efficient proximate cause doctrine should apply in first party property claims is an

issue of first impression in Maryland, I must predict how the Maryland Court of Appeals would rule were it to confront this issue. *See Delawder v. American Woodmark Corp.*, 178 Fed.Appx. 197, 202 n. 3 (4th Cir.2006) (because neither the West Virginia legislature nor any West Virginia court had defined the term within the context of the statute, "we must predict how the West Virginia Supreme Court would define this term if it had to confront this issue"); *Doe v. Doe*, 973 F.2d 237, 240 (4th Cir.1992) (holding that a federal court sitting in diversity must predict how a state court would decide an issue).

I conclude that the Maryland Court of Appeals would not apply the efficient proximate cause rule, but would instead follow the plain language of the concurrent causation clause in the policy's exclusion. I reach this conclusion for several reasons. First, as discussed *supra*, Maryland courts have rejected the efficient proximate cause rule for third party claims, and have not addressed the rule in any other context. *See Aragona*, 378 A.2d at 1351; *EDP Floors, Inc.*, 533 A.2d at 688. Furthermore, neither *Aragona* nor *EDP Floors* specifically limited their holdings-emphasizing the terms of the policy, not causation, in determining coverage-to third party claims. *Aragona* held: "[T]he terms of the policy determine the reach and extent of its coverage. In this connection, principles of causation will not be applied to defeat the intent of the parties, as manifested in the insurance contract; indeed, . . . general definitions of proximate causation afford little aid in determining wheth-

er a particular loss was intended to be covered under the insurance policy." 378 A.2d at 1351. Likewise, *EDP Floors* found the insured's causation arguments "unconvincing in light of the terms of the policy exclusion which flatly provide that there is no coverage for injuries arising out of the operation or use of a motor vehicle, including the loading or unloading thereof." 533 A.2d at 688.

Second, the case law plaintiff cites provides little support for applying the efficient proximate cause rule in the instant case. The policies in *Garvey, Murray, Kish,* and *Sunbreaker* did not have a lead-in clause like the one in the instant case, which stated explicitly that if a cause of loss is excluded under the policy, "[s]uch loss is excluded *regardless of any other cause or event contributing concurrently or in any sequence of loss.*" (Insurance Policy at 8 (emphasis added).) Instead, the policies in these four cases stated simply that all risks of physical loss to the property were covered except as otherwise excluded or limited. *Garvey*, 257 Cal. Rptr. 292, 770 P.2d at 705; *Murray*, 509 S.E.2d at 6; *Kish*, 883 P.2d at 309; *Sunbreaker*, 901 P.2d at 1081. In the instant case, however, the policy was unambiguous that when an excluded peril caused the loss, whether "directly or indirectly," the loss would not be covered regardless if any covered causes contributed. (Insurance Policy at 8.)

Furthermore, adoption of the efficient proximate cause test in *Garvey* and *Murray* was intended to establish a potential limit on coverage, not to expand it.[5] In

---

5. *Garvey* justified applying the efficient proximate cause rule to first party property claims and the concurrent cause rule to third party tort claims with the following explanation:

> [T]he 'cause' of loss in the context of a property insurance contract is totally different from that in a liability policy. This distinction is critical to the resolution of losses involving multiple causes. Frequent-

ly property losses occur which involve more than one peril that might be considered legally significant.... The task becomes one of identifying the most important cause of the loss and attributing the loss to that cause. On the other hand, the right to coverage in the third party liability insurance context draws on traditional tort concepts of fault, proximate cause and

both cases, because the policies in question did not include a concurrent cause provision, the trial courts had ruled that the insurers were liable as a matter of law where the evidence showed that the losses were caused by two different causes, one of which was excluded but the other of which was not. The appellate courts reversed this ruling, finding that the insurer would be liable only if the jury were to find that the covered cause was the efficient proximate cause of the loss. As stated in *Garvey*, a contrary holding would require other insureds "to bear the expense of increased premiums necessitated by the erroneous expansion of their insurers' potential liabilities." *Garvey*, 257 Cal. Rptr. 292, 770 P.2d at 711. This is not a concern in the instant case, where upholding the application of the concurrent causation clause would result in the *denial* of coverage. Accordingly, the rationale for avoiding the application of the concurrent causation clauses in *Garvey* and *Murray* is distinguishable from the instant case.

*Kish*, 883 P.2d at 308, and *Sunbreaker*, 901 P.2d at 1081, are similarly of limited value in assessing whether the Maryland Court of Appeals would apply the efficient proximate cause rule for first party claims. In both cases, the Washington appellate courts reviewed whether there was only one cause or two distinct causes of the loss. Neither case is of much help in addressing the issue in the instant case: whether a concurrent causation clause should be upheld where it results in the denial of coverage.

Finally, the numerous jurisdictions that have rejected the efficient proximate cause rule for first party claims—Pennsylvania,

Virginia, Wyoming, Missouri, New Jersey, Utah, Nevada, and Arizona—have persuasively prioritized the language of the exclusionary clause over principles of causation where a lead-in clause identical to the one in the instant case existed. Plaintiff's policy with Liberty excluded coverage "for loss caused directly or indirectly by [water damage,] ... regardless of any other cause or event contributing concurrently or in any sequence of loss." (Insurance Policy at 8.) Just as was the case in these eight other jurisdictions, here "[t]he language of the lead-in clause ... by definition negate[d] the efficient proximate cause doctrine." *T.H.E. Ins. Co.*, 455 F.Supp.2d at 293. Accordingly, regardless of whether wind or water damage was the "efficient proximate cause" in the instant case, Liberty was, as a matter of law, correct in denying coverage of plaintiff's loss.

For these reasons, I grant defendant's motion for summary judgment. A separate order to that effect is being entered herewith.

### ORDER

For the reasons stated in the accompanying Opinion, it is, this 27th day of February 2008

ORDERED

1. Defendant's motion for summary judgment is granted; and

2. Judgment is entered in favor of defendant against plaintiff.

---

duty.... In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks.

257 Cal.Rptr. 292, 770 P.2d at 710 (emphasis in original).

However, because the policy in *Garvey* did not have a lead-in clause stating that coverage will be denied if there is an excluded cause of loss *regardless* of other causes, *Garvey*'s distinction is not relevant to the instant case.