**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-1051**

DAVID S. BROWN ENTERPRISES, LTD; 8227 MAIN STREET LLC.; 8231 MAIN STREET LLC.,

        Plaintiffs – Appellants,

v.

AFFILIATED FM INSURANCE COMPANY,

        Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:18-cv-00319-SAG)

Argued: October 29, 2021                    Decided: January 6, 2022

Before NIEMEYER and KING, Circuit Judges, and Thomas T. CULLEN, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** C. Thomas Brown, SILVER & BROWN, Fairfax, Virginia, for Appellants. Bryant S. Green, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:** Erik B. Lawson, SILVER & BROWN, Fairfax, Virginia, for Appellants. Craig D. Roswell, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Over the course of one hour in July 2016, four and a half inches of rain fell on Ellicott City, Maryland. This historic rainfall created a flash flood that damaged many buildings in the city's historic downtown district. Appellant David S. Brown Enterprises, Ltd. ("DSB") submitted an insurance claim for damage to two of its buildings to its insurer, Appellee Affiliated FM Insurance Co. ("AFM"). AFM concluded that the policy's flood sublimit applied to the claim and capped DSB's recovery at $50,000.

DSB sued AFM, challenging what it perceived as a partial denial of coverage. It argued that a nearby watermain, which had burst during the flood, was solely responsible for the property damage, so the flood sublimit did not apply. The district court rejected this argument because the flood sublimit included an "anti-concurrent causation" clause. That clause defined any damage occurring contemporaneous with a flood as flood damage, thereby making all such damage subject to the policy's flood sublimit. The district court granted summary judgment in favor of AFM, and DSB appealed.

For the following reasons, we affirm.

I.

On July 30, 2016, Ellicott City experienced a 1,000-year rainfall. *See* J.A. 638 ("[T]here is a 0.1% chance or less of this rainfall occurring in these time durations and location in any given year."). Four and a half inches of rain fell in an hour, and the storm dropped over six and half inches of rain before it ended. This downpour caused nearby rivers to overflow, and the contents of those rivers spilled into the city. At the same time, an underground watermain in the downtown area ruptured, spraying water skyward and

2

adding to the overall water level. Video of the episode shows people kayaking through a municipal parking lot and helping emergency responders locate townspeople who needed help. Two people died, and many properties sustained significant damage.

Relevant to this case, two downtown buildings at 8227 Main Street and 8231 Main Street (the "Main Street Properties") suffered water damage. Kara Brown, the owner of these properties, filed two insurance claims to recoup her losses. She filed the first insurance claim with Selective Insurance Company ("SIC"), which directly insures the properties. SIC denied this claim under its policy's flood exclusion.

Brown also filed a second insurance claim through her husband's company, DSB. DSB, a real estate management company, had a business insurance policy ("the Policy") from AFM that covers the Main Street Properties. Unlike the SIC policy, which contained a flood exclusion, AFM's Policy covered flood damage, but limited recoveries for such damage to $50,000. In that claim, filed two days after the damage occurred, Brown explained that "[h]eavy rains and flooding caused . . . water damage to the [Main Street Properties]." J.A. 653. And the day after that, she emailed an engineering firm to determine whether the watermain break near her buildings could be "an angle" to avoid the Policy's flood sublimit. *See* J.A. 712. As recently as September 29, 2018, more than two years after the flood, Brown maintained on her personal blog that her "commercial investment properties on Main Street in the historic center of Ellicott City were completely destroyed *by flood*." J.A. 657 (emphasis added).

When AFM partially denied the claim, it explained that, under the Policy's relevant sublimits, DSB was only entitled to $50,000. DSB read the Policy more generously,

3

concluding that it was actually entitled to $2,000,000, and it sued AFM for that amount. The district court agreed with AFM's reading of the relevant contractual language and granted summary judgment to AFM. DSB appealed.

## II.

Our review of a district court's grant of summary judgment is *de novo. French v. Assurance Co. of Am.,* 448 F.3d 693, 700 (4th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

We apply Maryland law in interpreting the Policy because the Policy was delivered in Maryland and this diversity action was filed in the District of Maryland. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941) (holding that a federal court exercising diversity jurisdiction applies the choice of law principles of the state where the federal court is located); *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.,* 738 F.3d 95, 100 (4th Cir. 2013) ("In insurance contract disputes, Maryland follows the principle of *lex loci contractus,* which applies the law of the jurisdiction where the contract was made. For choice of law purposes, a contract is made where 'the last act is performed which makes the agreement a binding contract. Typically, this is where the policy is delivered and the premiums are paid.'" (citation omitted)).

## III.

## A.

Maryland courts interpret insurance policies using the same principles and rules of construction that they use to interpret other contracts. *Connors v. Gov't Emps. Ins. Co.,* 113

4

A.3d 595, 604 (Md. 2015). Where the policy's language is plain and unambiguous, they enforce the contract's terms. *Id.* The parties agree that the Policy covers the Main Street Properties. Their dispute centers on which Policy limit, if any, applies to DSB's claim.

As a threshold matter, it is undisputed that the Main Street Properties are subject to the Policy's "unnamed locations" sublimit because neither building is listed as a declared property in the insurance contract, but they are otherwise located within the Policy's territory.[1] *See* J.A. 1169. This sublimit requires AFM to insure properties it does not know about and has never evaluated, so it extends coverage to them but only at a predetermined and reduced level—$1,000,000. DSB argues that the "unnamed location" sublimit is the only sublimit that applies to the Main Street Properties, so AFM owes it $2,000,000— $1,000,000 for each of the Main Street Properties.

AFM agrees that the "unnamed location" sublimit applies, but it contends that the Policy's more restrictive flood sublimit caps DSB's claim at $50,000 per year for all "unnamed locations."[2] *See* J.A. 1134. Resolution of this issue turns on whether the damage at issue was caused by a flood, as defined in the Policy. The Policy defines a "flood" as

> flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of

---

[1] The "Policy's Territory" includes "the fifty (50) United States." J.A. 1134. Since the Main Street Properties are in Maryland, they are "unnamed locations" covered by the Policy and subject to a sublimit for damage of $1,000,000 per occurrence. *See* J.A. 1134–35.

[2] Under a heading reading "**SUB-LIMITS**," the policy sets $50,000 as the sublimit for "Flood annual aggregate as respects Errors & Omissions, Off-Premises Service Interruption, Unnamed Locations and Supply Chain combined." J.A. 1134.

> natural or man-made bodies of water; or the spray therefrom;
> all whether driven by wind or not; or sewer backup resulting
> from any of the foregoing; *regardless of any other cause or
> event, whether natural or man-made, contributing
> concurrently or in any other sequence of loss.*

J.A. 1191 (emphasis added). The final clause, beginning with the word "regardless," is an

anti-concurrent causation clause; these clauses are common in the insurance industry. *See*

3 *New Appleman on Insurance Law Library Edition* § 16.09(2)(b)(ii)(B) (2021) (offering

a template anti-concurrent causation clause: "We will not pay for loss or damage caused

directly or indirectly by any of the following . . . . Such loss or damage is excluded

regardless of any other cause or event that contributes concur[rently] or in any sequence to

the loss.").

Anti-concurrent causation clauses clarify an insurer's obligation when multiple

causes (e.g., both flood waters and high winds) contribute to the damage underlying a

claim. These clauses require insurers to show only that the excluded conduct (like a flood,

earthquake, or terrorist attack) contributed to the damage at issue. If an insurer can make

this showing, the exclusion applies. *See Park Ctr. III Ltd. P'ship v. Pa. Mfrs. Ass'n*, 30 F.

App'x 64, 70 (4th Cir. 2002) (per curiam). These provisions reduce the fact-finding burden

on the parties to an insurance contract and, when litigation ensues, on the courts by

eliminating the need to determine the proportional damage attributable to each cause.

Maryland courts routinely enforce these provisions in insurance disputes. *See, e.g.*, *N.*

*Assurance Co. of Am. v. EDP Floors, Inc.*, 533 A.2d 682, 688–89 (Md. 1987); *Aragone v.*

*St. Paul Fire & Marine Ins. Co.*, 378 A.2d 1346, 1350–51 (Md. 1977). Federal courts

interpreting Maryland law do as well. *See, e.g., Hamilton Jewelry, LLC v. Twin City Fire*

6

*Ins. Co.*, No. 8:20-cv-02248, 2021 WL 4214837, at *7 (D. Md. Sept. 16, 2021); *McWhorter v. Bankers Standard Ins. Co.*, No. PWG-18-2452, 2020 WL 1322977, *3–4 (D. Md. Mar. 20, 2020); *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 540 (D. Md. 2008).

Maryland is not unique in this regard. In *New York University v. Factory Mutual Insurance Co.*, NYU disputed the application of an anti-concurrent causation clause on facts similar to ours. 374 F. Supp. 3d 315 (S.D.N.Y. 2019), *aff'd*, No. 20-1093-cv (2d. Cir. July 26, 2021). That case dealt with damage to NYU's hospital and medical school when Hurricane Sandy struck New York City in 2012. *Id.* at 320–21. The insurer cited a flood sublimit within the applicable policy and paid NYU only the $40,000,000 contemplated under that provision. *Id.* at 321. NYU disputed the flood sublimit's application and sought the policy's overall coverage limit of $1,850,000,000. *Id.*

Specifically, NYU asserted that faulty workmanship by contractors, not the flood, caused some of its damages, and the university gave two specific examples. *See id.* at 321, 326–28. First, contractors uncovered a ventilation shaft leading to the basement of one of its buildings. *Id.* at 326 n.5. At least 11,000,000 gallons of water entered the building through that shaft during the storm. *Id.* Second, "a defectively designed wall separating two [adjoining] buildings failed, allowing water to travel from one building to the other." *Id.* And because these damages were attributable to faulty workmanship, and not a flood, NYU argued that it should be able to collect for them without regard to the flood sublimit. *Id.* at 326.

The Southern District of New York rejected NYU's argument. The definition of flood in NYU's policy included an anti-concurrent causation clause similar, in all material

7

respects, to the one at issue in this case. *Id.* at 319 (defining "flood" as "flood . . . regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss."). And so, the district court reasoned, even if the university were correct that faulty workmanship (and not a flood) caused the damage, this distinction was "immaterial because, even accepting NYU's claims of faulty workmanship, NYU's losses were the result of flood under the terms of the Policy." *Id.* at 326 n.5.

We find the analysis of the anti-concurrent causation clause in *New York University* persuasive. DSB alleges that a broken watermain damaged the Main Street Properties, just as NYU claimed that faulty workmanship damaged its facilities. But the Policy contains an anti-concurrent causation clause like the one in *New York University*. "This clear [anti-concurrent causation clause] is dispositive in [AFM's] favor: even if [a broken watermain] permitted flood waters to wreak havoc on [the Main Street properties], the resulting losses fall within the Policy's definition of flood." *See N.Y. Univ.*, 374 F. Supp. 3d at 327; *see also id.* at 326 n.5 ("[E]ven accepting [DSB]'s claims of [a broken watermain], [DSB]'s losses were the result of flood under the terms of the Policy."). Because it happened concurrently with a flood, whatever damage the watermain break caused is flood damage for purposes of the Policy's flood sublimit. The claim at issue is therefore subject to the $50,000 sublimit for flood damage to "unnamed locations."

B.

DSB makes three arguments in support of its position that the $50,000 flood sublimit does not apply, but none is convincing. DSB's first argument attempts to distinguish between water damage and flood, arguing that the water damage involved here

8

is not subject to the flood sublimit. Second, DSB argues that the flood sublimit's plain language allows claimants to distinguish between damage attributable to a flood and damage attributable to other causes. And third, DSB contends that we should interpret the anti-concurrent causation clause differently because it is in a sublimit rather than in an exclusion.

DSB's first argument takes the district court's opinion too literally and urges us to reverse based on this misreading. The district court wrote that "[t]he record reflects one [occurrence]—the foundations of the Main Street Properties were destroyed by water." J.A. 1622. Quoting that line, DSB argues that water damage was the applicable occurrence, not a flood. And if the occurrence was not a flood, DSB reasons, then the flood exclusion cannot apply.

This argument fails. Properly construed, an "occurrence" is basically an insurance claim. The Policy defines "occurrence" as "the sum total of all loss or damage of the type insured . . . arising out of or caused by one discrete event of physical loss or damage." J.A. 1191. An occurrence has three parts: (1) the sum total of the loss (2) that was caused by (3) one discrete event of physical loss. *See* J.A. 1191. Every occurrence, then, is attributable to "one discrete event of physical loss or damage." J.A. 1191. In other words, the event that causes an occurrence is not itself an occurrence.

Putting all this together, DSB's claim was for water damage. But the water damage resulted from the discrete event of the flood—and, by the flood sublimit's terms, "any other cause or event . . . contributing concurrently" to the physical loss or damage caused by the flood. J.A. 1191. This language plainly includes a watermain break like the one at issue

9

here, as it would any other natural or man-made event occurring simultaneously with a flood. We therefore reject DSB's attempt to misconstrue the district court's opinion as conflating the damage and its cause.

Second, DSB argues that the anti-concurrent causation clause in the Policy's definition of "flood" is not actually an anti-concurrent causation clause but instead allows insureds to claim the proportion of the damage attributable to other causes, less the damage attributable to the flood. Admittedly, DSB's plain language argument has some appeal. The use of "regardless" in the flood sublimit might plausibly be understood to mean something like, "The policy's plain language makes clear that a flood is a flood, regardless of other non-flood causes that contemporaneously damage the property." If that reading is correct, the flood sublimit might apply only to the damage attributable to the flood, and not to contemporaneous additional causes like broken watermains.

But this reading creates a surplusage problem. Courts must interpret contracts to give effect to every term. *See Clancy v. King*, 954 A.2d 1092, 1101 (Md. 2008). And DSB's proffered interpretation of the anti-concurrent causation clause adds nothing to the definition of flood. DSB provides no plausible alternative explanation for why AFM would have included this clause in the Policy if it does nothing more than restate the language preceding it.

Accordingly, we have no trouble adopting AFM's construction, which has been uniformly endorsed by state and federal courts interpreting substantially similar clauses under Maryland law, that its anti-concurrent causation clause expands the definition of "flood" to include events that occur simultaneously with a flood. We must give this clause

10

meaning, and only AFM, backed by uncontroverted authority, has offered a plausible meaning for its inclusion. *See Clancy,* 954 A.2d at 1101. Indeed, it is virtually identical to the clause that the District of Maryland found was an anti-concurrent causation clause in *Bao. See Bao,* 535 F. Supp. 2d at 540 ("[R]egardless of any other cause or event contributing concurrently or in any sequence of loss"); *see also Hamilton Jewelry,* 2021 WL 4214837, at *4–5 ("[R]egardless of any other cause or event that contributes concurrently or in any sequence to the loss"); *McWhorter,* 2020 WL 1322977, at *4 ("[R]egardless of any other cause or event contributing concurrently or in any sequence to the loss"); *N.Y Univ.,* 374 F. Supp. 3d at 320 ("[R]egardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss").

That brings us to Appellant's third argument: even though these above-cited anti-concurrent causation clauses are nearly identical, the clause in this case is distinguishable based on its location in the Policy. The clause in question appears in a sublimit, whereas the clauses in *Bao,* *Hamilton Jewelry,* and *McWhorter* all appeared in exclusions.

We find this distinction meaningless. A sublimit is a limited exclusion. When included in exceptions, anti-concurrent causation clauses act to eliminate the insurer's liability for certain events. But when included in sublimits, like in the Policy, these clauses only cap the insurer's liability. Whether the insurer writes such a clause into an exclusion or a sublimit does not change how courts interpret the clauses. Indeed, many courts have applied anti-concurrent causation clauses found in sublimits precisely as Maryland courts have applied those same clauses in exclusions. *See, e.g., N.Y Univ.,* 374 F. Supp. 3d at 326–

11

28 (enforcing anti-concurrent causation clause in a policy's flood sublimit); *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2014 WL 4977331, at *21–23 (N.D. Ill. Oct. 6, 2014) (enforcing anti-concurrent causation clause in a policy's "Earth Movement" sublimit).

In sum, we are unpersuaded that the district court erred in its application of the flood sublimit.

## IV.

The plain language of the Policy caps DSB's recovery, and the district court was correct in so holding.

*AFFIRMED*